CHARLES W. PIPER AND ABNER B. SMITH *v.* MOSES D. FARR.

[ IN CHANCERY. ]

*Tenants in Common. Partition. Waiver of Equitable Rights. Chancery.*

Where parties are tenants in common by deed, no form of issue under a petition for partition, can result in changing the operation of the deed; nor can the relation evinced thereby, be altered as the result of such proceeding, without impeaching the deed for fraud.

By consenting to the appointment of commissioners under such petition, a party does not thereby waive his equitable rights in the premises, and yield to the claim of his adversary adverse thereto, if he consents, supposing such equitable rights to be available to him before the commissioners.

Defendant sold the orator, P., the south half of a piece of land in severalty. P., by defendant's permission, placed a house thereon, and paid defendant the full purchase money thereof. Defendant thereupon executed a deed to P. of an undivided half of the whole land, which P. accepted, asserting his right to a deed of the south half in severalty, but relying upon defendant's assurance that the result would be the same under such deed as under one conveying the south half in severalty. Defendant never paid, nor agreed to pay, anything for said house. *Held*, that defendant was not equitably entitled to any interest in said house, and that his claim to an undivided half thereof in his proceedings by petition for partition, was a wrong which could not be righted without resort to a court of equity.

APPEAL from the court of chancery.

The bill alleged, that about the first of June, 1870, the orator, Piper, bargained with defendant to buy of him the south half of

about twenty acres of land in Bradford, described in a deed from defendant to Piper, dated the 20th of said June; that about the same time, one Rash bargained with defendant to buy of him the north half of said land; that it was distinctly understood and agreed between Piper and defendant, that Piper was to have the south half of said land in severalty, and not an undivided half of the whole tract, and understood that Rash was to have the north half; that Piper was to pay $181 for his purchase; that defendant did not then execute a deed, but that it was understood that Piper might move a certain dwelling-house belonging to him, standing on his land across the way from the land in question, upon the south half of said land, and take possession thereof, and when he paid the purchase-money, defendant was to execute a warranty deed thereof to him, by metes and bounds; that Piper moved the house upon said land accordingly, and afterwards paid defendant said purchase-money, which defendant accepted and received, and thereupon executed the deed aforesaid, thereby conveying one undivided half of said land to Piper, instead of the south half thereof by metes and bounds, as agreed; that defendant brought said deed to Piper, and Piper at first refused to take it, because it did not convey the south half in severalty; that defendant thereupon assured Piper, that when he conveyed to Rash, he would convey so as to divide the land, and give him the south half in severalty; that Piper, confiding in said assurance, supposing it would be made right, and that he would hold his purchase in severalty, took said deed, and caused the same to be recorded; that Rash never completed his purchase, and that defendant still held the other undivided half of said land; that the orator, Davis, loaned Piper the amount of said purchase-money, and took a mortgage from him of said land, dated Oct. 4, 1870, to secure the same; that defendant, although requested, had refused to sever and divide said land, intending, as the orators alleged, to defraud them out of one-half of said house; that defendant, intending as aforesaid, prayed out a petition for partition of said land, against the orators, dated Oct. 19, 1871, returnable to the December term, 1871, of Orange county court, and entered the same at said term, and that the orators, not then

supposing that defendant was intending to claim an interest in said house, and supposing that the south half of said land would be set to them without taking into account said house, did not oppose the prayer of said petition, and commissioners were appointed to partition said land; that the commissioners met the parties on May 20, 1872, when the defendant, for the first time, informed the orators that he claimed one undivided half of said house, and that the same should be taken into account in partitioning the premises; that Piper, for himself and Davis, then and there denied defendant's right to said house, and offered to show before the commissioners, the facts herein set forth, but that the commissioners decided they had no power to receive such evidence, but must take said house into account in making partition; that they did so, and gave defendant the benefit of one-half thereof in making partition, and would so report; that the orators, being ignorant of the law, and not supposing that defendant could have any right to said house, or that the same would be considered in making the partition, did not take counsel in the premises till after defendant made said claim before the commissioners; and that said house was worth more than the whole of said tract of land.

*Prayer*, that defendant be enjoined from further prosecuting his petition for partition, and all proceedings therein annulled and set aside, and defendant ordered to execute to orators, and orators to him, proper deeds so to partition said land that orators should acquire in severalty the portion thereof bargained for by said Piper as aforesaid; that said dwelling-house be treated as the sole property of orators; and for general relief.

The defendant in his answer alleged that on August 23, 1869, Piper bargained with him for the whole of said twenty acres, for $362, and then executed his bond to defendant, conditioned, if he moved said house onto said land, and afterwards, upon the execution of a warranty deed of said land to him by defendant, executed to defendant a mortgage thereof,—said bond to be void; that it was then understood that Piper should move the house that fall, and the deed and mortgage be executed forthwith, and that Piper was to pay $25 on the 1st of April then next, and the balance in

annual fifty-dollar installments; that Piper was relying upon his brother to assist him, but that he failed to do so; that nothing was done towards executing the contract till 1870; that in March of that year, Piper negotiated with one Rash to take half of said land, and applied to defendant to take Rash paymaster on the same terms of his bargain, and to deed half of the land to Rash, to which defendant consented, provided Rash would mortgage a certain other piece of land to defendant as additional security, but that his contract with Piper was not thereby altered; that no bargain was ever made to convey any portion of said land to either Piper or Rash in severalty; admitted that defendant executed to Piper the deed as alleged in the bill, conveying one undivided half of said land, and that Piper paid him therefor $181; alleged that defendant conveyed to Piper as aforesaid, relying upon Rash's taking the other half, which he afterwards refused to do; that defendant had requested Piper to fulfill his contract, and take the other half of said land, which he always refused to do; denied having any negotiation with Rash, except as aforesaid, but consented to take him pay-master as aforesaid, to accommodate Piper; denied that Piper ever declined to receive the deed executed to him as aforesaid, and denied the making of the assurance alleged, and all intention of defrauding the orators; averred a willingness to perform the contract as he claimed it; admitted the bringing of petition for partition as alleged, but denied that orators had no counsel and that they did not understand defendant's claim at the term said petition was entered; alleged that orators' counsel agreed with defendant's counsel at said term, upon commissioners, and that orators' counsel well understood that defendant then claimed partition of the entire premises, including said house, and that said counsel appeared before the commissioners, and offered to show the same facts set forth in the bill, claiming that such matters could then be shown, the same as in court under a proper plea; that orators requested defendant's counsel to have the commissioners called out, but that defendant was ignorant of their action in the premises.

The answer was traversed, and testimony taken, and the case heard on bill, answer, traverse, and proofs, at the June term,

1874, PECK, Chancellor, when the court decreed that the orators were entitled to partition of said premises, on the basis that defendant and Piper were equal owners in ·common thereof, exclusive of said house, and that the same be partitioned the same as though said house was not standing thereon, and in such a manner that said house be set to said Piper. Commissioners were appointed to make such partition ; and on the coming in of their report at the same term, it was further decreed that mutual deeds of partition be executed between the parties. Appeal by the defendant.

*Leslie & Rogers*, for the orators.

The case and proofs show, that Piper bargained for the whole lot, and gave a bond to defendant; that Piper's brother was interested in this bargain, but subsequently went to Canada, and Piper, not being able to take the whole lot, made a new trade with defendant, whereby he was to take the south half instead of the whole lot; that afterwards, in April 1870, Piper, with consent of defendant, moved his house upon the south half of the lot; that afterwards, on the 20th of June 1870, the last trade was consummated, and Piper paid defendant the purchase money therefor in full, and defendant executed a deed to Piper, conveying an *undivided* half, instead of the *south half*, of the land. We therefore insist, that the orators are fully entitled to the relief granted by the court of chancery, and that the decree of that court should in all particulars be affirmed. 1 Story Eq. Jur. §§ 655, 656 b ; 2 Story Eq. Jur. § 1237 ; *Maloy* v. *Sloans*, 44 Vt. 311.

It is no answer to this bill to say that a judgment of partition was rendered in the county court, and that no plea was put in by orators, denying that defendant had any property in the house, and that it should not be taken into consideration in the partition ; because it is *quite doubtful* if a court of law could give the adequate remedy and relief to orators ,upon any state of pleadings. A case like the present, comes more properly within equity jurisdiction, which court is able by its decree to give and carry out the proper relief. 1 Story Eq. Jur. §§ 654, 655, 656 b.

*R. Farnham*, for the defendant.

The orators seek in this proceeding to be relieved from the consequences of the neglect of their attorney in the pleadings in the petition for partition. The orators claim exclusive right and title to the house moved on to the land in question, and attempted to show that title before the commissioners. That was too late, and the opportunity was lost through the neglect of their attorney. *Gourley* v. *Woodbury*, 43 Vt. 89. Can they now come into this court, and ask to be relieved from the consequences of their own neglect, or that of their attorney? Even the consequences of ignorance of the law on the part of the orators themselves, could not be relieved in this court. STORY and FONBLANQUE both say, that the maxim, " *Ignorantia legis neminem excusat*," applies as well in equity as at law. If a party becomes remediless at law by his own negligence, equity will not relieve him. 1 Story Eq. Jur. §§ 111, 146, 147, 148 ; *Garnar* v. *Bird*, 57 Barb. 277. If these principles apply to this case, the injunction should be dissolved, and the bill dismissed with costs.

But if this is not sufficient ground for dismissing the bill, we still insist that the orators should not prevail. They pray that the suit at law be enjoined, and the proceedings vacated ; that the parties be ordered to execute mutual deeds of partition, so as to give the orators the south half of said land ; that the house in question may be treated as the property of the orators ; and for general relief. In support of this prayer, they allege, and attempt to prove, that defendant sold Piper the south half of said land in the spring of 1870, for $181, and that when the deed of an undivided half was executed, Piper was made to believe that it was as good to him as a deed of the south half in severalty ; they also claim that at the time of the partition by the commissioners, they were, and had been up to that time, unrepresented by counsel in the suit for partition, and suffered in consequence. The defendant claims, and his testimony tends to show, that he sold the whole lot to Piper, and that no after arrangement ever changed that contract.

Piper took a deed of an undivided half of the land after he had moved his house upon it. His mistake or ignorance of the

effect of that deed, cannot be here remedied. The presumption is that he was acquainted with his rights; and he cannot be relieved from the consequences of his executed contract. 1 Story Eq. Jur. § 111 ; *Proctor et al.* v. *Thrall et al.* 22 Vt. 262.

The orators failed to raise the question of the ownership of the house, or of the title to the premises, by the proper pleadings in the county court, and they come into this court to avoid the consequences of their own neglect, and ask that equity be done. They must first do equity, and place the defendant in as good position as he would be in if Piper had fulfilled his contract.

The opinion of the court was delivered by

BARRETT, J.   We present no discussion or statement of the evidence. The facts alluded to or stated as found, with a brief statement by the reporter, to be educed from the bill and answer, of the grounds of claim and defence, will make sufficiently intelligible the views of the court as expressed in what follows.

The orator, Piper, could not, in the petition for partition in the county court, avail himself of the claim he asserts in respect to the house in question. In that proceeding, the rights of the parties are to be governed by their respective legal title as tenants in common. Under the deed of the defendant to Piper, they were tenants in common of the entire twenty acres, with the house on it; so that, in view of that deed, the defendant was equal owner with Piper of the house as well as of the land. No form of issue under that petition, could have resulted in changing the operation of that deed into one of the south half of the lot in severalty. Nor could the relation evinced by that deed, be changed as the result of such proceeding, short of impeaching the deed for fraud, and thus leaving Piper without any legal title in the land, and only an equitable title and right in either house or land. This answers the point that Piper ought to have asserted his several and exclusive right to the house by plea to the petition, and that not having so done, he is precluded by his neglect in that respect, from going into a court of equity.

The only remaining ground of objection to his resorting to such court that could be asserted, is, that by his consenting to the ap-

pointment of commissioners under that petition, he is to be regarded as having yielded to defendant's claim of being tenant in common of both land and house. But this cannot be maintained. There was no judgment in that case. So Piper is not precluded and concluded on that score. Whether he waived his right, and yielded to the claim of the defendant, depend on the view and intent with which he took the course he did in that respect. It is plain that he did not intend to yield to such claim, but, on the contrary, supposed his right to the house and south half of the land, would be available to himself to every legal and equitable intent before, and by the action of, the commissioners in making the partition. Such "*ignorantia legis*" does not operate by *estoppel*, to divest him of his right in legal, as well as moral, equity, as against the defendant, in respect to either the house or the land. If, then, the defendant, in the proceeding for partition, was insisting on appropriating to himself half of that house by virtue of his apparent legal right betokened by the face of the deed, in violation of the equitable rights and duties between the parties, springing from the real transaction, it was proper for Piper to invoke the protection and remedy which it is the province of a court of equity to accord.

It only remains to inquire whether, on the facts proved, the defendant is entitled to have one half, or any part, of the house in question. It is shown that he has not paid, nor agreed to pay, anything for it; that he has been paid by Piper for one half of the land; that he permitted Piper to put the house upon the land before deeding, with the full understanding that Piper was to have title in severalty to the land on which it was placed. We find, also, that he agreed, in consideration of the money paid him by Piper, and so it was his duty, to give Piper a deed of the south half of the land in severalty, and that Piper accepted the deed that was made, still asserting his right, and yielding in that respect in reliance upon the assurance of the defendant that the result would be the same under that deed as under one conveying the south half in severalty. We fail to find that Piper undertook, or came under any obligation, to purchase, or to find a purchaser for, more than the south half of the twenty-acre lot; or that the

failure of his brother, or of Mr. Rash, to purchase the other half affected the duty of the defendant to convey to Piper the south half of the land. In view of these results from the evidence, the bringing of that petition was without ground or justifiable occasion ; and, in the proceedings under it, the assertion of right by defendant to have the value of one half of Piper's house reckoned in his favor in the making of the partition by the Commissioners, was a wrong that could not be effectually resisted, and Piper's rights secured and enforced, without resort to the court of equity.

The result illustrates how easy, as well as how politic and profitable it would have been for the defendant to have avoided occasion for litigation, by giving Piper such a deed as he was entitled to, or, even in his needless proceeding for partition, by letting the commissioners make the partition conformably to what they should have found to be the just rights of the parties, from evidence showing all the facts constituting the real transaction between them.

The decree is affirmed.