GRIDER et al. v. GROFF et al.

GROFF et al. v. GRIDER et al.

(Circuit Court of Appeals, Eighth Circuit. October 12, 1912. Rehearing
Denied January 10, 1913.)

Nos. 3,725, 3,726.

*(Syllabus by the Court.)*

1. PARTITION (§ 83*)—ACTION FOR PARTITION—RELIEF GRANTED.

When, after a portion of common property has been partitioned, either
voluntarily or by a decree, a court of chancery is prayed to find and ad-'
judge the interests in the remainder, and, if necessary, to partition it,
the court may, and it should, consider the respective shares of the value
of the entire property which each party has received under the former
partition, and so adjudge their interests in the remainder that each party
shall receive from both proceedings, as near as may be, that just share
of the value of all the property which in equity and good conscience he
ought to receive.

Under a decree which fixed the proportionate shares of the parties in
the value of 250 acres, 200 acres thereof were partitioned by a subsequent
final decree. In a subsequent suit to adjudicate the interests of the par-
ties in 36.5 acres of the 250 acres which had not been divided, it appeared
that 13.5 of the 250 acres had been lost, and that by the former decree
of partition of the 200 acres some of the parties had received their full
shares of the 236.5 acres.

*Held*, these parties were entitled to no share or interest in the 36.5
acres, and the title thereto should be quieted in the other parties.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 228, 229; Dec.
Dig. § 83.*]

2. JUDGMENT (§ 713*)—CONCLUSIVENESS—MATTERS CONCLUDED.

In a second suit upon a different cause of action between the same
parties as the first, the judgment in the former action operates as an
estoppel in the latter as to every point and question which was actually
litigated and determined in the first action; but it is not conclusive rela-
tive to other matters which might have been, but were not, litigated and
decided.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1063, 1234–
1241; Dec. Dig. § 713.*

Conclusiveness of judgment as dependent on theory of action or recov-
ery, see note to Millie Iron Mining Co. v. McKinney, 96 C. C. A. 163.]

Smith, Circuit Judge, dissenting.

Appeals from the District Court of the United States for the Dis-
trict of Kansas; John C. Pollock, Judge.

Action by Minnie C. Groff and others against Warner U. Grider
and another. From the judgment, both parties appeal. Reversed and
remanded, with instructions.

Charles Blood Smith, of Topeka, Kan. (Clifford Histed, of Kansas
City, Mo., and J. O. Fife and W. L. Wood, both of Kansas City,
Kan., on the brief), for plaintiffs.

Frank Doster, of Topeka, Kan. (Hunter M. Meriwether, of Kansas
City, Mo., on the briefs), for defendants.

Before SANBORN, HOOK, and SMITH, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SANBORN, Circuit Judge. On April 13, 1867, a decree was ren-. dered in a suit in partition in a court of the state of Kansas, whereby the ownership of 250 acres of land at the confluence of the Missouri and Kansas rivers, known as the Armstrong tract, was adjudged to be as follows: Thomas Ewing, Jr., 19.42 acres, of average value thereof; Lawrence P. Graham, 8.63 acres; Thomas H. Swope, 10 acres of average value; Union Pacific Railway Company, Eastern Division, 12.07 acres, of average value; the Calhoun heirs, $1/8$ thereof, less 8.63 acres; the Armstrong heirs, $3/8$ thereof, less 42.50 acres; David E. James $18/48$ thereof; George B. Wood, $5/48$ thereof; Mary ·J. Wise, $1/8$ thereof. Commissioners were appointed by that decree to set apart in severalty to these parties their respective shares of the land. In September, 1867, they reported that 50 acres of the tract had been washed away by the rivers, that they had allotted the remainder of the 250 acres to the respective parties as described in their report, whereby 48.09 acres, of average value, were allotted to the first four parties named above, and 151.91 acres to the last five parties there mentioned. This report and allotment was confirmed and decreed by the court in October, 1867. The first four parties named had acquired their titles ·by conveyances of specified numbers of undivided acres of the tract and for convenience they will be called the "acre owners." These conveyances created a tenancy in common between them and parties who owned fractional parts· of the land, who will be termed "fractional owners," and the effect of their deeds and of the decree was to vest in each of them title to such a portion of the value of ·the 250 acres as the number of acres decreed to each bore to the whole number of acres in the tract. For example, the Union Pacific Railway Company, Eastern Division, which· was adjudged to be the owner of 12.07 acres, of average value, was thereby in reality decreed to be the owner of $12.07/250$ of the value of the 250 acres. Grider v. Wood, 178 Fed. 908, 910, 102 C. C. A. 109, 111.

By an avulsion in the spring of 1867, 50 acres of this tract was swept away by the rivers, and the commissioners and the court in the fall of 1867 partitioned only 200 acres, then above water, in the mistaken belief that the other 50 acres were irrevocably lost. After the decree of apportionment, however, 36.5 acres of the submerged 50 acres were restored, and the controversy in this suit involves the equities of the parties in this undivided remnant of the 250-acre tract.

The complainants in .this suit, Minnie C. Groff and others, are the successors in interest of the parties who were adjudged by the decree of April 13, 1867, to have fractional interests in the 250 acres, and they are in possession of the 36.5 acres. The defendants, Warner U. Grider and· the Missouri Land Company, have succeeded to the interests of the parties who were adjudged by that decree to be the owners of undivided acres of average value. Grider had brought, and was prosecuting, an action of ejectment against the complainants for these 36.5 acres, a dismissal of which had been reversed by this court, with directions to try it again, when the complainants exhibited this bill to enjoin the prosecution of that action and of a similar action for the same purpose, instituted by the Missouri Land Company, to

quiet the title to the 36.5 acres in the complainants, and, if the defendants were found to have any interest therein, to partition the 36.5 acres among its owners. These fractional owners alleged in their bill that the predecessors in interest of the defendants, who were parties to the partition suit of 1867, had received under the decrees in that suit more than their entire shares of the 200 acres then partitioned and of the 36.5 acres now in controversy, so that they had no equitable right to or interest in the latter tract of land, and ought to be enjoined from claiming any title to or possession thereof. The defendants answered the bill, and filed cross-bills, wherein they prayed that the 36.5 acres be partitioned between them and the complainants, and that they receive in value the same proportion of this remnant of the Armstrong tract which they were adjudged to receive of the 200 acres by the allotment decree of October, 1867. Testimony was taken, a final hearing had, and the court below held (1) that the decree of April 13, 1867, which adjudged the proportionate rights of the parties in the 250 acres, was conclusive upon all the parties and their predecessors, and that their subsequent rights and equities must be measured thereby; (2) that the subsequent decree of allotment of October, 1867, which confirmed the report of the commissioners, setting apart the specific tracts of the 200 acres pursuant to the April decree, rendered the respective rights of the parties to those allotments res adjudicata; and (3) that, where any of the parties subsequently prayed a court of equity to partition the remaining 36.5 acres, the chancellor might and should take the adjudications of the specific interests of the parties in the 250 acres as his basis and measure, and, taking into consideration what part of the value of the 250 acres adjudged to the respective parties by the decree of April 13, 1867, they had respectively received under the decree of allotment of the 200 acres in October, 1867, should so partition and decree the title to the 36.5 acres that each party should receive, out of the entire 236.5 acres adjudged by all the decrees, his just and equitable share as nearly as possible. All parties concede the soundness of the first two propositions, but the third is questioned by counsel.

The court below found that each acre of the 236.5 was of the same average value as every other acre; that by the decree of April 13, 1867, the acre owners were adjudged to be the owners of 50.12 acres of average value of the 250 acres, and that the fractional owners were adjudged to be the owners of the remainder; that pursuant to that decree, and under the allotment decree of October, 1867, which followed it, the acre owners received 48.09 acres of average value, so that they were still entitled to receive only 2.03 acres more out of the remaining 50 acres, but that, as only 36.5 acres had been restored, they were entitled to only 36.5/50 of the 2.03 acres, or 1.482 acres. A decree was entered to that effect, and all the parties appealed.

The finding of the court below that each acre of the original tract, of the 200-acre tract partitioned, and of the 36.5-acre tract restored, was of like average value with all the other acres, is questioned; but it is sustained by the evidence, and the proof is conclusive that the

48.09 acres allotted to the acre owners by the decree of October, 1867, was of the same average value as the 151.91 acres allotted to the fractional owners by that decree, so that the fact is indisputable that under the decree of April 13, 1867, the acre owners were entitled to $50.12/250$ of the value of the original tract, and the fractional owners to $199.88/250$ of that value, that under the allotment decree the acre owners received out of the 200 acres, $48.09/250$ of the value of the 250-acre tract and the fractional owners $151.91/250$ thereof. The question for determination now is what, if any, share of the 36.5 acres restored are the acre owners justly entitled to receive in view of these facts?

[1] Counsel for the fractional owners contend that the acre owners are entitled to no share whatever in this tract, because they are entitled to nothing on account of the 13.5 acres irrevocably lost, and they have already received out of the 200 acres more than their full adjudged share of the entire 236.5 acres. The mathematical basis of this contention is unanswerable. The acre owners were entitled to $50.12/250$ of the 236.5 acres by virtue of the decree of April 13, 1867, which is 47.41 acres, and they had received 48.09 acres of average value under the allotment decree of October, 1867, or .68 of an acre more than their full share of the entire 236.5 acres. The Union Pacific Railway Company, Eastern Division, one of these acre owners, now represented by the defendant Warner U. Grider, was entitled under the decree of April 13, 1867, to $12.07/250$ of the 236.5 acres, which is 11.41 acres. It has received under the allotment decree of October, 1867, 11.58 acres, or .17 of an acre more than its just share. The other acre owners, represented in this suit by the Missouri Land Company, have received under the allotment decree .51 of an acre more than their full share of the 236.5 acres adjudged to belong to them by the decree of April 13, 1867. The fractional owners, on the other hand, by the decree of April 13, 1867, were adjudged to be entitled to $199.88/250$ of the 236.5 acres, which is 189.08 acres of average value, and they have received under the allotment decree of October, 1867, 151.91 acres, 37.17 acres less than the share adjudged to them by the April decree. Upon this state of the mathematics of the case, counsel for the fractional owners argue that, because they will receive no more than their just and adjudged share of the 36.5 acres if they retain that entire tract, while the acre owners will still have more than their adjudged share of the 236.5 acres, the latter should receive no part of the 36.5 acres, and the title thereto should be quieted in the fractional owners.

Counsel for the acre owners, on the other hand, insist that they are entitled to receive the same proportionate share of the value of the 36.5 acres that they received of the 200 acres, or $48.09/200$ thereof, which amounts to about 8.79 acres. Their argument is founded on several grounds, but chiefly on the proposition that the decree of allotment has rendered res adjudicata the question what was the acre owners' just share of the 200 acres, and the question what is their just share of the 36.5 acres. That it conclusively determined the first question must be conceded. But did it adjudicate the second?

The argument is that it adjudged the proportionate share of the acre owners in the 200 acres and thereby adjudged their proportionate share in the 36.5 acres. But the adjudication of their share in the 200 acres expressly excluded by the very terms of the allotment and decree, and left undetermined, their share in the 36.5 acres.

Their next contention is that the adjudication that 48.09 acres was the acre owners' just share of the 200 acres conclusively estops the fractional owners from claiming or proving in this controversy concerning the 36.5 acres that the acre owners received out of the 200 acres their full share of the entire 236.5 acres. It is clear that the decree estopped all parties thereto from denying that their respective shares in the 200 acres were rightly adjudicated. But it did not, in this new suit for the partition of this new subject-matter, the 36.5 acres, estop any party from availing himself of the facts which the decrees in the partition suit of 1867 established, that the acre owners were entitled to but $50.12/250$ of the value of the 250 acres, that they received $48.09/250$ of that value under the decree of partition of the 200 acres, and that this was more than $50.12/250$ of the entire 236.5 acres, for the purpose of showing the shares of the remaining 36.5 acres which in justice and equity the parties to the new suit should receive. The proof and consideration of these facts in the adjudication of this new subject-matter neither collaterally nor directly assails, modifies, or avoids the decrees of 1867. Nor does it in any way infringe the rule of law here invoked, that where a second suit is brought between the same parties upon a different cause of action, the judgment in the former action operates as an estoppel in the latter as to every point and question which was actually litigated and determined in the first action; but it is not conclusive relative to other matters which might have been, but were not, litigated or decided. Harrison v. Remington Paper Co., 140 Fed. 385, 400, 72 C. C. A. 405, 420, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314; Linton v. Ins. Co., 104 Fed. 584, 587, 44 C. C. A. 54, 57; Commissioners v. Platt, 79 Fed. 567, 571, 25 C. C. A. 87, 91; Board v. Sutliff, 97 Fed. 270, 274, 38 C. C. A. 167, 171; Southern Pac. Co. v. United States, 168 U. S. 1, 48, 18 Sup. Ct. 18, 42 L. Ed. 355; Southern Minn. Ry. Extension Co. v. St. Paul & S. C. R. Co., 55 Fed. 690, 5 C. C. A. 249.

[2] Conceding the conclusiveness of the adjudication that the just shares of the 200 acres were as set forth in the decree of October, 1867, the question there litigated, the issue what shares the respective parties are entitled to receive in the 36.5 acres, in view of the shares of the 250 acres to which they were conclusively adjudged to be entitled by the decree of April 13, 1867, and of the shares they actually received under the decree of October, 1867, an issue not litigated in the former suit and here first in question, is not concluded by those decrees, but is open to litigation and to such a decision as in the light of all the facts and circumstances equity and good conscience demand. The cases cited by counsel for the acre owners in support of their argument here, Stewart v. Mizell, 8 Ired. Eq. (43 N. C.) 242, Witham v. Cutts, 4 Greenl. (Me.) 31, and Torrey v. Pond, 102 Mass. 355, concern collateral attacks upon former adjudications, and are condi-

202 F.—44

tioned by facts so radically different from those which govern this case that they do not rule the question here under consideration, and they fail to persuade that the answer that has been given to it is not right.

Another contention of counsel for the acre owners is that their deeds and the adjudication that they were the owners of 50.12/250 of the value of the 250 acres created a cotenancy between them and the other owners, and title to their proportionate interest in every acre of the tract, and therefore in every acre of the 36.5 acres, and that this interest was neither diminished nor affected by the subsequent allotment to and receipt by them of the 48.09/250 of the value of the entire 250 acres. It is undoubtedly true that, laying aside all equities, the deeds and decree created such a cotenancy. But every cotenant holds his title in trust to yield to each of his cotenants the latter's just share of the common property, in view of all the equities that have arisen, or may arise, between them. This is a suit in equity. All parties have prayed the court to ascertain and adjudge their respective interests in this land according to the rules and principles of equity jurisprudence. Like an ordinary suit in partition, the purpose and effect of this suit are to ascertain and adjust the equitable rights of the parties in these 36.5 acres, and, if necessary, to set off in severalty and adjudge to each that share of the value of this land to which he is equitably entitled. 21 Amer. & Eng. Encyc. of Law (2d Ed.) 1171, 1172, 1174; Piper v. Farr, 47 Vt. 721.

In such a suit a cotenant is entitled to an allowance for payments he has made of taxes, assessments, and liens upon the common property. Illinois Land & Loan Co. v. Bonner, 75 Ill. 315. When he has received more than his share of the rents of the common property, the excess may be charged to his account, and the amount of his share in the partition diminished thereby. Barnes v. Rodgers, 54 S. C. 115, 31 S. E. 885. If he has placed improvements on the property, he may be allowed their value, and his share may be increased thereby. Parcoe v. Swan, 25 L. J. Ch. 159; Cochran v. Shoenberger (C. C.) 33 Fed. 397. Advancements made by a decedent to some of those who become cotenants may be brought into hotchpotch, and such an adjustment and partition may be made that, taking these advancements into consideration, each heir shall receive his just equitable share of the value of the property. White v. White, 41 Kan. 556, 21 Pac. 604. And where, after a part of common property has been partitioned by a decree, and a court of chancery is prayed to find and adjust the interests of the parties in the remainder, and, if necessary, to partition it, the court may, and it should, consider the respective shares of the value of the entire property which each party has already received under the former partition, and so adjudge the disposition of the remainder that each party shall receive from both proceedings, as near as may be, that just share of the value of all the property to which in justice and good conscience he is entitled.

The suggestion is repeatedly made in the brief for the acre owners that the decrees of 1867 fail to show that they received more than their share of the 200 acres, although they disclose the fact that they

received a larger number of acres than their share, because they are partitions of the value of the 200 acres, and the receipt of an excessive number of acres is not evidence of the receipt of an excess of value. But, as has been already stated, the evidence is conclusive, and without conflict, that the commissioners so apportioned and the court so partitioned the 200 acres that the acres adjudged to each party were of the same average value as those adjudged to every other party. The result is unavoidable that the number of acres allotted was conclusive evidence of the proportion of the value allotted to each party.

It is earnestly contended that the computation, on which the conclusions which have been stated are based, are erroneous in this: That the share adjudged to the acre owners by the decree of April 13, 1867, was $50.12/_{208}$ of the value of the land, and not $50.12/_{250}$ thereof. In support of this contention they cite these facts: On April 11, 1867, the Kansas court ordered John Runk to survey the land within the boundaries mentioned in the petition in the suit of 1867, and to report by the following Saturday. The decree of April 13, 1867, was entered on the following Saturday. There is a statement in the report of the commissioners made on September 26, 1867, which was subsequently confirmed by the court, that by a survey made during the April, 1867, term of the court there were found to be 208 acres in the tract then in controversy, that a division of these 208 acres based on that survey was made, whereby the acre owners were given the number of acres specified as their respective shares in the April decree, that a subsequent survey in July disclosed the fact that there were only 200 acres remaining in the tract, and that the allotments which the commissioners finally made, and their report, were proportioned in quantity to that fact. But the conclusion that the proportionate interests of the parties fixed by the decree of April 13, 1867, were in the 208 acres, and not in the 250 acres, is demonstrated to be a mistake by the decree itself and the pleadings on which it rests. The petitioners in that suit describe in their petition and pray the partition of "all that parcel of land lying in the forks of the Missouri and Kansas rivers and between the Missouri state line and the Kansas river as lies north of Turkey creek, containing about 250 acres, more or less." The decree of April 13, 1867, describes the tract in the same words, and adjudges the ownership in that tract of 250 acres, excepting about 8 acres described by metes and bounds, as stated in the opening of this opinion. And the fact which concludes this issue is that if a reduction of the fractional shares adjudged by the April decree to acres on the basis of an adjudication of the 250 acres be made, the aggregate of all the acres adjudged by that decree becomes 250 acres, while if those shares are reduced to acres on the basis of an adjudication of the 208 acres the aggregate number so adjudicated becomes about 216 acres. There can, therefore, be no mistake in the conclusion of the court below, and of this court, that the decree of April 13, 1867, adjudicated the respective shares of the parties in the 250 acres, and not in the 208 acres.

The arguments and suggestions of the parties regarding their rights

to the property here in controversy have now been considered and discussed. The result is that the record in this suit proves that the acre owners received out of the 200 acres that was partitioned in 1867 their full proportionate and adjudged share of the value of the 200 acres then partitioned and of the 36.5 acres now in controversy, that if the fractional owners retain all of this 36.5 acres they will not receive more than their proportionate adjudged share of the 236.5 acres, that there is consequently no equity in the cross-bill of the acre owners, and the fractional owners are entitled to a decree quieting in them the title to the 36.5 acres and perpetually enjoining the farther prosecution of the actions of ejectment brought by the defendants, Grider and the Missouri Land Company.

This conclusion renders immaterial specifications of error relating to the transfer of the title of the Union Pacific Railway Company, Eastern Division, to Grider, and to some of the terms of the decree below, and they are dismissed without discussion.

Let the decree below be reversed, with costs of each appeal against the acre owners, and let the case be remanded to the court below, with instructions to render a decree in accordance with the views expressed in this opinion.

SMITH, Circuit Judge, dissents.