## LINTON et al. v. NATIONAL LIFE INS. CO. OF VERMONT.

(Circuit Court of Appeals, Eighth Circuit. October 22, 1900.)

No. 1,409.

**1. RES ADJUDICATA—JUDGMENT ON SAME CAUSE OF ACTION.**

The rule of estoppel by judgment is that, when the second suit is upon the same cause of action and between the same parties as the first, the judgment in the former is conclusive in the latter as to every question which was or might have been presented and determined in the former.

**2. SAME—JUDGMENT ON DIFFERENT CAUSE OF ACTION.**

When the second suit is upon a different cause of action, but between the same parties as the first, the judgment in the former action operates as an estoppel in the latter as to every point and question which was actually litigated and determined in the first action, but it is not conclusive as to other matters which might have been, but were not, litigated or decided.

**3. SAME—QUESTIONS ACTUALLY DECIDED.**

Where, in an action on a coupon note for interest, the question whether the terms of a power of attorney were broad enough to warrant the attorney in fact, who, on behalf of the makers, executed the note for the principal, the coupon notes for the interest, and a mortgage securing them, to borrow money, and to execute these instruments for his principal, and the question whether or not the certificate of acknowledgment on the letter of attorney was in legal form, were actually litigated and decided, and a judgment was rendered against the grantors in the letter of attorney, *held*, that in a subsequent action between the same parties on the note for the principal, or on other coupon notes for interest, and on the mortgage, these questions were res adjudicata, and could not be again litigated.

**4. DEED—ACKNOWLEDGMENT—NECESSITY—RECORD AND ADMISSION IN EVIDENCE.**

An acknowledgment of the execution of an instrument affecting the title to real estate in Nebraska is not essential to the validity of the instrument between the parties to it. The acknowledgment is not a part of the conveyance under the statutes of Nebraska, but its purpose and effect are to authorize the record of the instrument, and to qualify it for admission in evidence without further proof.

**5. MARRIED WOMEN—CONVEYANCES—RELEASE OF DOWER AND HOMESTEAD.**

The conveyances of married women are governed by this rule, except in cases which involve the release of dower or of rights in their homesteads.

**6. ESTOPPEL.**

One who by his acts or representations, or by his silence when he ought to speak out, intentionally, or through culpable negligence, induces another to believe certain facts to exist, and the latter rightfully acts on such a belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts, is thereby conclusively estopped to interpose such denial.

**7. ACKNOWLEDGMENT—ESTOPPEL TO IMPEACH—BONA FIDE PURCHASER.**

As against a bona fide purchaser or mortgagee who is not a party to the instrument, and who has paid his money in reliance upon the certificate of the acknowledgment of a deed or other instrument affecting the title to real estate, which is duly signed and delivered, the grantors are conclusively estopped from denying the existence of the facts which the officer taking the acknowledgment had jurisdiction to, and did, evince by his certificate.

**8. SAME—CONSUL GENERAL MAY TAKE.**

A consul general is a "consul of the United States," within the meaning of Comp. St. Neb. 1899, c. 73, § 6, and has authority to take and

certify the acknowledgment of instruments affecting the title to real estate situated in the state of Nebraska.

9. SAME—ESTOPPEL TO IMPEACH.

A husband and wife signed and delivered to F. a letter of attorney empowering him to mortgage or convey the property of the wife. The consul general of the United States at London affixed to this letter of attorney his certificate that the grantors of the power had duly acknowledged its execution, and the letter of attorney and this certificate were properly recorded in the state of Nebraska. Thereafter F., as attorney in fact for the grantors in the power, borrowed $25,000 of the National Life Insurance Company, which made the loan, and paid the proceeds to F., in reliance upon the letter of attorney and certificate, and F., as such attorney in fact, gave to it notes and a mortgage of the grantors in the power upon the separate estate of the wife. *Held*, that the grantors in the letter of attorney were estopped by these facts from denying that the execution of the power of attorney was acknowledged by them as stated in the certificate of the consul general.

10. SAME—IMPEACHMENT BETWEEN PARTIES—EVIDENCE.

A certificate of acknowledgment of an instrument affecting the title to real estate is presumed to be true, and, even in a controversy between the parties to the instrument, that presumption cannot be overcome without evidence that is so plain and convincing that the issue is not doubtful. A mere preponderance of evidence is not enough. The evidence in this case considered, and *held* to be insufficient to impeach the certificate of the officer even between the parties to the letter of attorney.

11. MARRIED WOMEN MAY ACT THROUGH AN ATTORNEY IN FACT.

A married woman may lease, mortgage, convey, manage, and control her real estate in the state of Nebraska by means of an attorney in fact. Comp. St. c. 73, §§ 42, 56.

12. LETTER OF ATTORNEY—CONVEYANCE OF SEPARATE ESTATE OF WIFE.

A letter of attorney executed by husband and wife, which by its terms empowers the attorney in fact to convey, lease, or mortgage any parcels of real estate which have descended to, or been acquired by, the wife, Phœbe, or either of the grantors named in the power of attorney, is the letter of attorney of the wife as well as that of the husband, and it authorizes the attorney in fact to convey, lease, or mortgage the seperate estate of the wife.

13. DEED—EXECUTION ABROAD—NECESSITY OF REVENUE STAMP.

A letter of attorney to convey and mortgage lands in the United States and in England, executed in the latter country, where the revenue laws require it to be stamped, and make it inadmissible in evidence until it is stamped, but do not avoid it for lack of a stamp, is not invalid for the want of such a stamp, nor is it inadmissible in the courts of the United States on that account, since the revenue laws of England do not prescribe the rules of practice or evidence in the courts of the United States.

14. INTEREST—CONTRACT FOR HIGHER RATE AFTER MATURITY.

A contract in a promissory note for a lawful rate of interest from date to maturity, and for a higher, but lawful, rate after maturity, is valid and enforceable.

15. DECREE—RATE OF INTEREST.

The decree or judgment upon such a contract lawfully draws interest at the higher rate until it is paid, because this was the agreement of the parties.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Nebraska.

John T. Cathers, for appellants.

Frank H. Gaines (E. R. Duffie and J. E. Kelby, on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges..

SANBORN, Circuit Judge. This is an appeal from a decree of foreclosure of a mortgage upon real estate situated in the city of Omaha, in the state of Nebraska. The appellant Phœbe R. E. E. Linton was the owner of a large amount of real estate in the United States which she had inherited, and John P. Finlay was her father. In June, 1892, Finlay, as the attorney in fact of Phœbe R. E. E. Linton and of Adolphus F. Linton, her husband, the appellants, borrowed of the National Life Insurance Company of Vermont, a corporation, the appellee, $25,000, and gave to it a promissory note for that amount, dated June 1, 1892, due June 1, 1897, eight coupons for $750 each for interest, and a mortgage on improved real estate of Mrs. Linton situated in Omaha to secure the payment of these notes. The notes and the mortgage were signed with the names of the appellants, and executed on their behalf by Finlay as their attorney in fact, and the proceeds of the loan were paid to him. The four coupon notes which fell due on December 1, 1895, June 1, 1896, December 1, 1896, and June 1, 1897, respectively, and the note for $25,000 principal, have not been paid, and this suit was brought to foreclose the mortgage which secured their payment. The authority of Finlay to borrow the money and to make the notes and mortgage was a letter of attorney signed by the appellants and delivered to Finlay in London, England, on July 24, 1891. This letter of attorney bore a certificate of acknowledgment of its execution by the appellants signed and sealed by the consul general of the United States at the consulate in London, and it had been recorded in the proper office in the state of Nebraska before the loan was made. The defense to the foreclosure was that for various reasons the letter of attorney did not authorize Finlay to borrow the money or to make the notes or mortgage on behalf of the appellants. Testimony was taken, and at the final hearing upon the merits the court below overruled this defense, and rendered a decree of foreclosure of the mortgage. This decree of foreclosure is challenged by counsel for the appellants on the grounds (1) that the letter of attorney did not by its terms empower Finlay to borrow money or to make promissory notes or other obligations on behalf of the appellants to repay borrowed money, or to mortgage lands to secure the payment of a new debt; (2) that the certificate of acknowledgment upon the letter of attorney was not in the form required by the law; (3) that the execution of the letter of attorney was not in fact acknowledged by the appellants; (4) that a married woman cannot lawfully convey or mortgage her real estate in Nebraska by an attorney in fact; (5) that the notes and mortgage did not bind Mrs. Linton or charge her real estate, because she never received any consideration for them; (6) that the letter of attorney is that of Mr. Linton alone, and does not empower Finlay to act for Mrs. Linton, or to convey, mortgage, or charge her property; and (7) that the letter of attorney was not stamped as required by the law of England, where it was executed.

An examination of the record discloses the fact that the first two objections of counsel to this decree are not open to consideration in this suit. On July 8, 1895, the appellee brought an action against the appellants in the county court of Douglas county, Neb., upon one of the coupon notes secured by this mortgage which became due on June 1, 1895. The complaint upon which that action went to trial set forth the letter of attorney here in question, and alleged that the note sued on in that action was executed by Finlay on behalf of the appellants by virtue of the authority granted to him by this letter of attorney, and for the purpose of enabling him to borrow for the appellants the $25,000 which he obtained from the appellee. Mr. and Mrs. Linton answered this complaint that Finlay was not authorized, by this letter of attorney or otherwise, to borrow any money, or to make any note or mortgage, on their behalf, and that the letter of attorney had not been executed according to law, and was not binding upon them. The issues thus made were tried upon their merits, and a judgment was rendered by the county court of Douglas county in favor of the insurance company for the full amount claimed in its complaint. That judgment was never reversed or modified, but was paid. At the trial which resulted in that judgment the question whether or not the terms of the letter of attorney were sufficient to authorize Finlay to borrow money for the appellants, and to execute notes therefor in their names, and the question whether or not the certificate of acknowledgment was in accordance with the statutes, were raised, litigated, argued, and decided by the court against the appellants. The court of Douglas county held that the power vested by the terms of the letter of attorney was ample to enable Finlay to borrow the money and to make the notes, and that the certificate of the acknowledgment of the execution of the letter of attorney was in due and legal form. The judgment in that action conclusively estops the appellants from again litigating those questions. The rule of estoppel by judgment is that, when the second suit is upon the same cause of action and between the same parties as the first, the judgment in the former is conclusive in the latter as to every question which was or might have been presented and determined in the former. When the second suit is upon a different cause of action, but between the same parties as the first, the judgment in the former action operates as an estoppel in the latter as to every point and question which was actually litigated and determined in the first action; but it is not conclusive as to other matters which might have been, but were not, litigated or decided. Cromwell v. Sac Co., 94 U. S. 351, 352, 24 L. Ed. 195; Nesbitt v. District, 144 U. S. 610, 618, 12 Sup. Ct. 746, 36 L. Ed. 562; Commissioners v. Platt, 79 Fed. 567, 571, 25 C. C. A. 87, 91, 49 U. S. App. 216, 223; Commissioners v. Sutliff, 38 C. C. A. 167, 97 Fed. 270, 274. This is a suit between the same parties who were involved in the action upon the coupon note due on June 1, 1895, but upon a cause of action different from that there in controversy, and every point and question which was actually and necessarily litigated and decided in that action is res adjudicata in this. The question whether or not the terms of the letter of attorney were

broad enough to empower Finlay to borrow money for the appellants and to execute their notes to secure a new debt, and the question whether or not the certificate of acknowledgment was in accordance with the law, were raised, litigated, and decided in that action, and the appellants are conclusively estopped by the judgment therein from again presenting or litigating them here. In this suit the letter of attorney and the form of the certificate of acknowledgment must be conclusively presumed to have authorized Finlay to borrow the money and to execute the notes and mortgage in controversy on behalf of the appellants.

The third reason why the decree should be reversed which is urged upon our consideration is that the execution of the letter of attorney never was in fact acknowledged by the appellants. The force of this contention must be determined by the statutes of the state of Nebraska,—by the law of the situs of the real estate mortgaged,—and there are several fatal objections to it.

In the first place, an. acknowledgment of the execution of an instrument affecting the title to real estate is not essential to the validity of the instrument between the parties to it and their privies under the statutes of that state. The execution of a deed, mortgage, or letter of attorney may be proved by competent testimony, and full force and effect may be given to it without any acknowledgment. The acknowledgment prescribed by the statutes of Nebraska is not a part of the conveyance or instrument, and its purpose and effect is not to condition the validity of the mortgage or power of attorney, but to entitle it to record, and to authorize its admission in evidence without other proof. Comp. St. 1899, c. 73, § 1; Burbank v. Ellis, 7 Neb. 156, 163; Horbach v. Tyrrell, 48 Neb. 514, 516, 67 N. W. 485, 489, 37 L. R. A. 434.

Nor is a married woman exempt from these rules in any case except where the instrument in question involves her dower (Comp. St. 1899, c. 23, § 12), or her homestead (Comp. St. 1899, c. 36, § 4). In all other cases an acknowledgment by a married woman of the execution of an instrument affecting her title to real estate is not essential to its validity in the state of Nebraska. If, therefore, as the appellants claim, they never acknowledged the letter of attorney, it was still valid and effective, because their signatures to it and its delivery to the attorney in fact, Finlay, are established by the evidence. Linton v. Cooper, 53 Neb. 406, 408, 73 N. W. 731.

In the second place, this record discloses the facts that this letter of attorney was signed and delivered to the attorney in fact by the appellants; that Mr. John C. New, the consul general of the United States at London, placed upon it his official certificate, to the effect that the appellants had properly acknowledged its execution before him; that the power of attorney and this certificate were recorded in the proper office in the state of Nebraska; and that in reliance upon this record the appellee loaned to the attorney in fact, Finlay, the $25,000 in controversy. In this state of the facts the appellants are estopped, both on general principles and under the technical rule applicable to certificates of acknowledgment, from denying the fact stated in the certificate to the injury of the appellee. By sign-

ing the letter of attorney, and placing it in the possession and under the control of Finlay, they gave him the opportunity and the means to present to innocent purchasers the appearance of an instrument duly acknowledged by the appellants, and the record of an instrument apparently so acknowledged. In reliance upon this apparent state of facts, the appellee loaned its money, and the appellants are thereby estopped from denying that the appearance which they negligently permitted their agent to make did not correspond with the reality. One who by his acts or representations, or by his silence when he ought to speak out, intentionally, or through culpable negligence, induces another to believe certain facts to exist, and the latter rightfully acts on such a belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts, is thereby conclusively estopped from interposing such denial. Butler v. Cockrill, 73 Fed. 945, 951, 20 C. C. A. 122, 128, 36 U. S. App. 702, 712, and cases there cited. The same result follows under the rule applicable to the impeachment of the certificate of acknowledgment. That certificate was an official act of the consul general. It carried with it the strong legal presumption that the officer who had signed it faithfully discharged his duty, and that he had certified to the truth, and not to a falsehood. There was no claim or pretense that this certificate had been procured by the fraud or collusion of the appellee, or that it ever knew there was any claim that the certificate was false until after it had loaned its money in reliance upon its truth. The appellee was not a party to the letter of attorney, but an innocent mortgagee, that loaned its money in good faith, in the belief that the certificate was true. In Drury v. Foster, 2 Wall. 24, 34, 17 L. Ed. 782, Mr. Justice Nelson, in delivering the opinion of the supreme court, said:

"There is authority for saying that, where a perfect deed has been signed and acknowledged before the proper officer, an inquiry into the examination of the feme covert, embracing the requisites of the statute, as constituting the acknowledgment, with a view to contradict the writing, is inadmissible; that the acts of the officer for this purpose are judicial and conclusive."

In Young v. Duvall, 109 U. S. 573, 577, 3 Sup. Ct. 416, 27 L. Ed. 1038, the supreme court said that if the officer's certificate "can be contradicted, to the injury of those who in good faith have acted upon it, the proof to that end must be such as will clearly and fully show the certificate to be false or fraudulent. The mischiefs that would ensue from a different rule could not well be overstated. The cases of hardship upon married women that might occur under the operation of such a rule are of less consequence than the general insecurity of titles to real estate, which would inevitably follow from one less rigorous." In Hitz v. Jenks, 123 U. S. 298, 304, 8 Sup. Ct. 147, 31 L. Ed. 159, Mr. Justice Gray, in delivering the opinion of the court, after quoting from the opinions just cited, said:

"It would be inconsistent with the reasons above stated, as well as with a great weight of authority, to hold that, in the case of a deed actually executed by a married woman of full age and sound mind, a certificate of her separate examination and acknowledgment, in the form prescribed by the statute, and duly recorded with the deed, can afterwards, except for fraud,

be controlled or avoided by extrinsic evidence of the manner in which the examination was conducted by the magistrate."

These opinions, the general principles of the law, and the great weight of authority throughout the land establish this just and equitable rule: As against a bona fide purchaser or mortgagee, who is not a party to the instrument, and who has paid his money in reliance upon the record of a certificate of the acknowledgment of a deed or instrument duly signed and delivered which affects the title to real estate, the grantors are conclusively estopped from denying the existence of the facts stated in the certificate which the officer had jurisdiction to ascertain and to certify. Whart. Ev. § 1052; note to Smith v. Ward, 1 Am. Dec. 81 (s. c. 2 Root,'374); Fitzgerald v. Fitzgerald, 12 Reporter, 720; Williams v. Baker, 71 Pa. St. 476, 482; Hall v. Patterson, 51 Pa. St. 289; Miller v. Wentworth, 82 Pa. St. 280, 285. `

Moreover, if the issue whether or not the execution of this letter of attorney was acknowledged by the appellants had arisen between the parties to it, and it had been necessary to determine that question upon the evidence in this record, regardless of the rules of law to which reference has been made, the result could not have been different. The certificate carries with it the legal presumption that the officer who made it faithfully discharged his duty. That officer testified that, while he could not remember the particular act, he had never taken or certified an acknowledgment which did not truthfully state the facts contained therein, and that from the custom of his office he should say that the appellants appeared and acknowledged the execution of the letter of attorney. This evidence is opposed by the positive testimony of the appellants and by that alone. The testimony of Mrs. Linton disclosed the fact that she did not remember that she had appeared at the consulate and acknowledged the execution of other instruments which she had undoubtedly signed and acknowledged, and, while the testimony of Mr. Linton was positive and circumstantial, it was not, in our opinion, sufficient, either alone or with the corroboration to be derived from the testimony of his wife, to overcome the force of the certificate and the testimony of the officer. The officer was disinterested, and the appellants were interested. The burden rested on them of overcoming the testimony of Mr. New and the strong presumption that the certificate made at the time was true. A mere preponderance of testimony was not sufficient for this purpose. If the proofs were doubtful or unsatisfactory, if the presumption of the truth of the certificate was not overcome by testimony plain and convincing beyond reasonable controversy, the issue should be found for the certificate. Pereau v. Frederick, 17 Neb. 117, 119, 22 N. W. 235; Howland v. Blake, 97 U. S. 624, 24 L. Ed. 1027; Marston v. Brittenham, 76 Ill. 611, 614; Lickmon v. Harding, 65 Ill. 505; Graham v. Anderson, 42 Ill. 514, 519; Monroe v. Poorman, 62 Ill. 523, 527. The testimony that the certificate of acknowledgment was false is not of this clear and convincing character, and, if the issue had arisen between the parties to the letter of attorney, it must have been found in favor of its truth. The objection to this decree that the letter of

attorney was never acknowledged cannot be sustained. In reaching this conclusion, the argument of counsel for the appellants that the consul general at London was not authorized to take and certify acknowledgments of instruments affecting real estate in Nebraska, although the statutes of that state authorize a "consul of the United States" to do so, has not escaped attention. Comp. St. Neb. c. 73, § 6. But that position has not seemed worthy of discussion, because no reason occurs to us why the legislature of Nebraska could have intended to give the power to take and certify acknowledgments to a consul, and to withhold it from a consul general. One is a consul as much as the other, and the natural presumption is that the legislature intended to give the consul of higher rank as much power as the consul of lower grade..

It is said that the decree should be reversed because a married woman was not authorized to act, contract, convey, or mortgage her real estate by or through an attorney in fact; that, therefore, the letter of attorney and mortgage from Mrs. Linton were void, and her land was free from the incumbrance. This contention, and the authorities cited to sustain it, rest upon the disability of a feme covert under the common law to act by an attorney in fact. Miller v. Ruble, 107 Pa. St. 395; Banking Co. v. Wright (Neb.) 74 N. W. 82; Devl. Deeds, § 548. But the right and power of Mrs. Linton to convey and mortgage her lands in the state of Nebraska must be measured by the law of that state. The chapter of the statutes of that state which relates to conveyances of real estate provides: "Any real estate belonging to a married woman, may be managed, controlled, leased, devised, or conveyed by her by deed, or by will, in the same manner and with like effect as if she were single." Comp. St. 1899, c. 73, § 42. And "every instrument required by any of the provisions of this chapter to be subscribed by any party, may be subscribed by his agent thereunto authorized by writing." Comp. St. 1899, c. 73, § 56. A married woman may therefore act or contract concerning, convey, or mortgage her real estate in the state of Nebraska by or through her attorney in fact.

Another position of counsel for the appellants is that the notes and the mortgage did not bind Mrs. Linton or charge her real estate, because she never received any consideration for them. This proposition is based upon an alleged fact which the testimony does not establish to our satisfaction. The attorney in fact, Finlay, died before the testimony in this case was taken, and his books and accounts were not produced. He received the proceeds of the loan which was secured by this mortgage as the attorney in fact of his daughter and her husband. He was collecting a large portion of the income of his daughter, and expending it as his judgment and discretion dictated. There is evidence that he received and paid over or expended more than $200.000 in this way. Shortly after this loan was made he caused $4,891.50 to be remitted from Omaha, Neb., where he received the proceeds of the loan, to the Union Bank of London, to the credit of Mrs. Linton, and he paid state, county, and city taxes upon her property to the amount of about $5,500. In one place Mr. Linton testifies that the money remitted to the Union

Bank for Mrs. Linton was used to pay a note made by Finlay for furniture which he had purchased of Linton for his daughter, Mrs. Linton, and that they supposed that this remittance was a payment out of the moneys belonging to Finlay. In other places in the record may be found his testimony to the effect that he never knew anything about the receipt of this remittance, either by himself or by his wife. If it was true that Finlay purchased of Mr. Linton a large amount of furniture for which he gave his note, and that he paid him for this furniture with a portion of the moneys which he derived from the loan, it is not true that Mrs. Linton's estate derived no benefit from these proceeds because she obtained the furniture, and the testimony is undisputed that the taxes upon her property were paid by Finlay out of the moneys received from the appellee on account of this mortgage. It is true that Mr. and Mrs. Linton both testify that neither she nor her estate ever derived any benefit or received any consideration for the notes and mortgage in suit. But it is also true that the testimony of Mrs. Linton shows that she gave her father, Finlay, almost unlimited power as her agent to collect and dispose of her income, and that she knew little or nothing about his accounts or his acts. The evidence is conclusive that he paid the taxes upon her property from the proceeds of this loan. It is persuasive that the remittance which he made to the Union Bank of London to her credit did not fail to reach its intended destination. We are satisfied that she received some consideration and her estate derived some benefit from this mortgage.

It is next insisted that the letter of attorney is that of the husband alone, and that it does not empower the attorney in fact to act for Mrs. Linton, or to convey, mortgage, or charge her property. The position is without foundation or plausibility. It is best answered by the terms of the early portion of the power of attorney itself, which expressly authorize the attorney in fact to convey and mortgage the property of Mrs. Linton. They are:

"Know all men by these presents that we, Adolphus Frederick Linton and Phebe Rebecca Elizabeth Elwina Linton, his wife, of Brighton, England, have made, constituted, and appointed, and by these presents do make, constitute, and appoint, John Borland Finlay, of the commonwealth of Pennsylvania, in the United States of America, our true and lawful attorney, for us, or either of us, and in our or either of our names, places, and steads, to grant, bargain, and sell, convey, exchange, assign, transfer, lease, mortgage, or confirm any or all tracts, pieces, parcels, or lots of real estate, as well as of coal, ore, petroleum, or other valuable minerals, claims, rights, interests, or hereditaments which have descended to or been or may be acquired by or for the said Phebe, or either of us," and to make deeds, bonds, mortgages, obligations, or instruments requisite or necessary therefor, or in any manner connected therewith.

The remaining objection to the letter of attorney is that it was signed and acknowledged in England, and does not bear the revenue stamp required by the law of that country. But the penalty for a failure to properly stamp an instrument of this character under the law of England is not the avoidance of the instrument, but its inadmissibility in the courts of that country until it is properly stamped. The omission of the stamp did not, therefore, affect the validity of

the power of attorney, or its admissibility in evidence in the courts of the United States, whose practice is not prescribed by the revenue laws of England.

The reasons urged for a reversal of this decree have now been considered, and but one objection to it remains, and that is that the amount found to be due upon the notes is too large. Counsel for appellants stated in argument and they assert in their brief that there is included in the amount adjudged due by the decree a penalty for the failure of the mortgagors to pay their notes at maturity, which consists of interest on the amount of the principal note at the rate of 10 per cent. per annum from its date, June 1, 1892, to the date of the decree. A careful computation of the interest according to the terms of the contract has demonstrated the fact, however, that the mathematics of counsel is as much at sea in this case as are their views of the law and the facts. The note for the $25,000 contained contracts (1) that the makers would pay interest at 6 per cent. per annum according to the terms of coupons attached, until June 1, 1897, when the note fell due, and interest semiannually at 10 per cent. per annum thereafter; and (2) that, in case of, default of payment according to the terms of the note, the makers would pay interest at the rate of 10 per cent. per annum from the date of the note until it was paid. Each coupon note contained a contract that it should draw interest at 10 per cent. per annum after its maturity. The contention of counsel for appellants is that the agreement to pay interest at 10 per cent. per annum from the date of the note in case of default was a contract to pay a penalty, was illegal, and that the decree is erroneous, because the amount of this penalty is included in the amount found due therein. It is not material in this case whether the position of counsel relative to the character of this contract concerning the default is or is not tenable, and that question will not be considered, because the fact necessary to its presentation does not exist. Ten per centum per annum is a lawful contract rate of interest in the state of Nebraska. The makers of these notes had the right to agree to pay a higher rate of interest after the maturity of their notes than they contracted to pay before their maturity. They did agree that after the maturity of the note for $25,-000 they would pay interest on that sum semiannually at the rate of 10 per cent. per annum, and that they would pay interest from the date of their maturity upon the amount of each of the coupon notes at the rate of 10 per cent. per annum. The decree includes interest on the amount of these notes after their maturity at this rate, the amount of interest evidenced by the face of the coupon notes, and no other interest. It lawfully provides that the amount found to be due thereon shall draw interest at the rate of 10 per cent. per annum from the date of the decree until its amount is paid, because that was the agreement of the parties evidenced by the notes. There is therefore no error in the amount or in the terms of the decree. A contract for a lawful rate of interest before the maturity of a promissory note, and for a higher, but lawful, rate after maturity, is valid and enforceable, and it entitles the holder of the note to the higher rate, both before and after the judgment or de-

cree thereon, and until the debt is paid. Havemeyer v. Paul, 45 Neb. 373, 389, 63 N. W. 932; Hallam v. Telleren (Neb.) 75 N. W. 560; Insurance Co. v. Westerhoff (Neb.) 78 N. W. 724. The decree below is affirmed.