## HOTTELET CO. v. GARDEN CITY MILLING CO.

(Circuit Court of Appeals, Eighth Circuit. December 23, 1922.)

No. 5921.

1. Judgment ☞713(2)—Estoppel as to matters that might have been litigated.

Where a second suit is on the same cause of action and between the same parties as a former action, the judgment in the first action is conclusive in the second as to every question and issue which was or might have been presented and determined therein.

2. Judgment ☞713(2)—Effect as estoppel, when second suit is on different cause of action.

When a second suit is on a different cause of action from the first, but between the same parties, the judgment in the first is conclusive only as to matters which were actually litigated and determined.

3. Judgment ☞948(1)—Pleading and proof necessary to show that prior judgment is estoppel in second suit on different cause of action.

Where the record is such that there is, or may be, a material issue, question, or matter in a second suit between the same parties, but on a different cause of action, which may not have been raised, litigated, or decided in the former action, the judgment therein does not constitute an estoppel from litigating that issue, question, or matter, unless by pleading or proof the party asserting the estoppel establishes the fact that the issue, question, or matter was actually and necessarily litigated and determined in the former suit.

4. Sales ☞166(1)—Breach of pure food law by others than defendant held immaterial.

In an action by the purchaser of a meal for stock food against the seller for breach of contract in failing to deliver a marketable product, the fact that sellers other than the parties to this action misbranded or adulterated the meal in violation of the pure food law is not sufficient to entitle plaintiff to a judgment.

5. Trial ☞260(1)—Refusal of instruction not error, when covered by general charge.

Where a rule or principle of law is clearly declared by the court in its general charge, it is not error to refuse to repeat it in the words of counsel.

In Error to the District Court of the United States for the District of Kansas.

Action at law by the Hottelet Company against the Garden City Milling Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Charles Blood Smith, of Topeka, Kan. (Samuel Barnum, of Topeka, Kan., on the brief), for plaintiff in error.

C. C. Hamlin, of Colorado Springs, Colo. (James H. Rothrock, of Colorado Springs, Colo., on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SANBORN, Circuit Judge. In June, 1917, the defendant, the Garden City Milling Company, a corporation, the manufacturer at Garden City, Kan., of a food product for dairy·cows called "sugar beet meal," made a contract with the plaintiff, the Hottelet Company, a corporation, located at Milwaukee, Wis., engaged in the business of a jobber and shipper of feed for dairy cows, whereby the defendant agreed to make, sell, and deliver to the plaintiff, f. o. b. cars at Garden City, its sugar beet meal for $21 per ton, and the plaintiff agreed to buy that product and to pay at that rate therefor. Pursuant to this agreement the defendant made and delivered to the plaintiff at Garden City in December, 1917, and January, 1918, and the plaintiff paid $21 per ton for 6,075 sacks of this sugar beet meal. On July 3, 1919, the plaintiff sued the defendant in the court below for $13,913.70 damages for breach of the contract because the sugar beet meal delivered was, as it alleged, not of a merchantable character, was not properly dried, and was entirely worthless as a food product. The defendant, by its answer, denied the plaintiff's averments of the unmerchantable and worthless character of the meal, and alleged that it was sound, well dried, fit for food for dairy cows, and well worth the price paid for it. The action was tried by a jury, which found for the defendant, a judgment was thereupon rendered in its favor, and the plaintiff sued out this writ of error to review certain rulings of the court at the trial.

The plaintiff has assigned five alleged errors. The first and second are that the court denied the plaintiff's motion to strike out the testimony of Gillespie and Vance, two of the defendant's witnesses, to the character and condition of the sugar beet meal in the summer of 1918, while it was in the possession of the United States marshal for the Eastern district of Wisconsin, in the city of Milwaukee, because, as counsel assert, that testimony impeached the judgments and decrees of the United States District Court of that district, whereby some of the meal was adjudged to have been introduced into interstate commerce while adulterated and misbranded by others than the defendant, months after the defendant sold and delivered it. At the trial certified copies of the records in these proceedings in Wisconsin were introduced in evidence over the objections of the defendant, and they disclosed these facts:

The defendant delivered the meal in cars at Garden City, Kan., consigned to the parties at the destinations specified by the plaintiff. For example, some of it was consigned and shipped to a purchaser from the plaintiff at Sussex, N. J., who subsequently shipped it to the plaintiff in Milwaukee, Wis. After it arrived there the United States filed a libel against the meal under which the marshal seized it on June 4, 1918. In its libel the United States alleged that the meal in the original unbroken packages was sold, delivered, and shipped by S. F. Scattergood & Co. in interstate commerce from Sussex to the Hottelet Company and the Francis Duhne Milling Company at Milwaukee, Wis.; that at the time it was sold and shipped it was adulterated and misbranded, so that the sale, shipment, and transportation thereof in interstate commerce from New Jersey into the state of Wisconsin

was a violation of the Act of June 30, 1906, 34 Stat. c. 3915, p. 768 (Comp. St. §§ 8717–8728), prohibiting such shipments. Under the monition issued on this libel the marshal seized a quantity of the meal on June 4, 1918. Mr. Hottelet, who was the president of the Hottelet Company when the contract here in suit was made, appeared in the libel suit, answered that the Hottelet Company was dissolved, that he had succeeded to the ownership of all its property, and he claimed the meal, but did not deny the averments in the libel of the introduction of the meal into interstate commerce while it was misbranded and adulterated.

On September 16, 1918, the defendant in this action presented to the United States District Court in Wisconsin its written application in that libel suit to take samples of the meal in the marshal's possession, to have it analyzed, to be permitted to offer evidence to the amount of sand and dirt in it, and the effect thereof upon its value as a stock food, and that after hearing evidence upon this subject the court decreed that the meal be not destroyed, but that it be released to the claimant, Hottelet, to be sold and used as a stock food on such terms as the court should find to be just and proper. In this application the defendant alleged that it was interested in the terms of the decree, because it was the manufacturer of the meal, and if the court should order it to be destroyed on account of the matters alleged in the libel, it would be bound to restore to the purchaser from it the purchase price thereof. Upon the presentation of this application, the answer of the claimant, and the stipulation of the claimant in this suit, the court ordered the entry of a decree that the libel be taken as confessed, and that the product be declared to be adulterated and misbranded, as alleged therein, that the motion for judgment be continued, and that the Garden City Milling Company and the libelant be permitted to take samples of the meal. On November 30, 1918, the court in Wisconsin rendered its final decree to the effect that the libel was taken as confessed, that the meal was condemned and forfeited, and that the marshal should destroy it. There were other libels, proceedings, and decrees of the same nature against other shipments of the meal.

[1] The ground of the motion to strike out the testimony of Gillespie and Vance to the merchantable character of the meal in the summer of 1918, when they obtained their samples, was that the defendant, the Garden City Milling Company, is estopped from proving the merchantable character of the meal by the decrees in the libel suits that the meal was in June, 1918, when the libel was filed, so misbranded and adulterated that its introduction into interstate commerce was a violation of the prohibition of the act of Congress which has been cited. But the first rule pertinent to estoppel by a decree or judgment in this case is:

"Where the second suit is upon the same cause of action and between the same parties as the first, the judgment in the former is conclusive in the latter as to every question and issue which was or might have been presented and determined in the first suit." Pierce v. National Bank of Commerce (C. C. A.) 268 Fed. 487, 495; Harrison v. Remington Paper Co., 140 Fed. 385, 400, 72 C. C. A. 405, 410, 3 L. R. A. (N. S.) 954, 5 Am. Cas. 314; Id., 199 U. S. 607, 26 Sup. Ct. 747, 50 L. Ed. 331; Southern Pacific Ry. v. United

States, 168 U. S. 1, 48, 18 Sup. Ct. 18, 42 L. Ed. 355; Linton v. National Life Ins. Co., 104 Fed. 584, 587, 44 C. C. A. 54, 57.

But the second suit here was not upon the same cause of action as the first suit. The first suit was for a breach in December, 1917, and January, 1918, of a contract of sale between the Garden City Company and the Hottelet Company while the second suits, the libel suits, were by the United States against the res, the meal, for violation of the act of Congress against adulteration and misbranding, and conceding but not admitting, that the Hottelet Company and the Garden City Company were parties to the libel suits, they were parties on the same side of them and the cause of action in the case at bar was not and could not have been presented or determined in those suits. The test of the identity of the causes of action is the identity of the facts essential to maintain them. Harrison v. Remington Paper Co., 140 Fed. 385, 400, 72 C. C. A. 405, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314. And the facts necessary to maintain the libel suits would not sustain the action under consideration, nor would the facts necessary to maintain this action sustain the libel suits.

[2] Again, when the second suit is upon a different cause of action, but between the same parties as the first, the judgment in the former action operates as an estoppel in the latter as to every point and question which was actually litigated and determined in the first action; but it is not conclusive relative to other matters which might have been but were not litigated or decided. Pierce v. National Bank of Commerce, 268 Fed. 487, 495; Harrison v. Remington Paper Co., 140 Fed. 385, 400, 72 C. C. A. 405, 420, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314; Id., 199 U. S. 607, 26 Sup. Ct. 747, 50 L. Ed. 331; Cromwell v. County of Sac, 94 U. S. 351, 352, 24 L. Ed. 195; Nesbit v. Riverside Independent District, 144 U. S. 610, 618, 12 Sup. Ct. 746, 36 L. Ed. 562; Grider v. Groff, 202 Fed. 685, 687, 121 C. C. A. 95; Board of Com'rs v. Platt, 79 Fed. 567, 25 C. C. A. 87; Linton v. National Life Ins. Co., 104 Fed. 584, 587, 44 C. C. A. 54; Board of Com'rs Lake County v. Sutliff, 97 Fed. 270, 274, 38 C. C. A. 167, 171.

[3] Another rule is that where the record is such that there is or may be a material issue, question, or matter in the second suit upon a different cause of action which may not have been raised, litigated, or decided in the former action, the judgment therein does not constitute an estoppel from litigating that issue, question, or matter, unless by pleading or proof, the party asserting the estoppel establishes the fact that the issue, question, or matter in dispute was actually and necessarily litigated and determined in the former action. Harrison v. Remington Paper Co., 140 Fed. 385, 400, 72 C. C. A. 405, 420, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314; Russell v. Place, 94 U. S. 606, 608, 24 L. Ed. 214; Ætna Life Ins. Co. v. Board of Com'rs, 117 Fed. 82, 88, 54 C. C. A. 468, 474; Cromwell v. County of Sac, 94 U. S. 351, 359, 24 L. Ed. 195; Nesbit v. Independent District, 144 U. S. 610, 619, 12 Sup. Ct. 746, 36 L. Ed. 652; Belleville & St. L. Ry. Co. v. Leathe, 84 Fed. 103, 105, 28 C. C. A. 279, 281.

The crucial issue in the case at bar is whether the meal was merchantable or unmerchantable food for dairy cows in December, 1917,

and January, 1918, when the defendant delivered it to the plaintiff The plaintiff has neither pleaded nor proved that this question or matter in dispute in this suit was actually and necessarily litigated or determined in the libel suits, and the defendant was not estopped by the proceedings, judgments, or decrees in those suits from proving by the witnesses Gillespie and Vance, the merchantable character of the meal, and there was no error in the refusal by the court below to grant the motion to strike out their testimony.

[4] Counsel complain of the refusal of the court to grant their request that it charge the jury that the violation of the pure food law by a manufacturer is evidence of neglect in the preparation of a food product, and that if they found that the defendant had violated that law in the preparation of the meal they should render a verdict for the plaintiff for such damages as the evidence convinced them it suffered. But this was not an action for damages for neglect but it was an action for a breach of a contract. If the defendant did not break its contract it was not liable in this action however negligent it may have been in the preparation of its product, and if it was guilty of a breach of its contract to the plaintiff's damage, the plaintiff was entitled to recover although the defendant had exercised extraordinary care in manufacturing its meal. There was therefore no error in the refusal to charge as here requested.

[5] The fourth alleged error was that the court refused to give to the jury an instruction requested by the plaintiff to the effect that where a manufactured food product is purchased from the manufacturer for resale at another place and the object of the purchase is known to the seller, the latter impliedly warrants that the article is merchantable, in proper condition to stand shipment by the means of transporting it, and to remain merchantable for a reasonable time after it has been received by the purchaser. There was however, no error in the refusal to give that charge because the court in its general instruction to the jury clearly and positively gave to them in his own words the rule of law embodied in this request, and the case was tried throughout in accordance with that rule. Where a rule or principle of law is clearly declared by the court in its general charge it is not error to refuse to repeat it in the words of counsel. Lesser Cotton Co. v. St. Louis & Iron Mountain Ry. Co., 114 Fed. 133, 52 C. C. A. 95; Chicago, Great Western Ry. Co. v. Roddy, 131 Fed. 712, 717, 65 C. C. A. 470.

The fifth and last alleged error is that the court erred in rendering judgment upon the verdict returned by the jury in favor of the defendant and against the plaintiff for its costs, but this assignment of error is too general to present any legal question for review, and the judgment below must be affirmed. It is so ordered.

Judge CARLAND participated in the consideration and concurred in the decision of this case, but died before the opinion was submitted to him.