HYDE et al. v. BLAXTER et al.

BLAXTER et al. v. HYDE et al.

(Circuit Court of Appeals, Eighth Circuit. April 28, 1924.)

Nos. 6435, 6436.

1. **Mines and minerals ⬾78(2)—Forfeiture of lease on one 40 held properly denied, and properly granted as to other 40's.**

   Under oil and gas lease, providing that on certain date each 40-acre tract that was not developed should revert to lessor, court properly denied forfeiture as to one tract, on which a well had been started in time to complete it before that date, but its completion was prevented by unusual conditions, not to be anticipated, and properly granted forfeiture as to two other 40-acre tracts, on which no wells had been started, though seven 40's out of ten had been developed, at an expense of $150,000.

2. **Judgment ⬾736—Declaratory judgment, interpreting lease, held not res judicata in action by lessees to quiet title.**

   A judgment, under Declaratory Judgment Act of Kansas, interpreting lease contract of ten 40-acre tracts, adjudging that any 40-acre tract not developed would revert to lessor on certain date, *held* not res judicata, so as to prevent quieting of title to certain 40-acre tract by lessees, where writ of assistance was denied in former action on ground that question as to whether or not lessees were complying with terms of lease was not presented to that court.

3. **Mines and minerals ⬾77—Lessor held not entitled to damages or release under Kansas statute.**

   Where lease of ten 40-acre tracts bore date of October 24, 1918, and was to "remain in force for a term of five years from this date, and as long thereafter as oil and gas or either of them is produced," statutes of Kansas (section 4994, Gen. St. 1915) that entitle lessor to sue for release and obtain damages, when owner of lease neglects or refuses to execute a release after having failed to comply with certain recording laws, did not entitle lessors to such relief in 1922, though lease provided for reverter of 40-acre tracts to lessors, if not developed January 1, 1922.

4. **Action ⬾22—Proceeding under Kansas statute to recover damages from lessee under oil and gas lease held action at law.**

   Proceeding under Kansas statute (Gen. St. 1915, § 4994) by lessor in oil and gas lease for damages and release of lease, after failure of lessees to comply with recording acts, *held* an action at law.

5. **Courts ⬾347—Counterclaim in cross-complaint must be suit in equity, under equity rule.**

   Under equity rule 30, a counterclaim cannot be set out in a cross-complaint, unless it be subject of an independent suit in equity against plaintiff; and this is true as to a cross-bill, whose substantive purpose is only to recover damages, though it in form seeks equitable relief.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit in equity by George H. Blaxter and another against Alex Hyde and others. From the decree, both parties appeal. Affirmed.

Warwick M. Downing, of Denver, Colo., and A. F. Sims, of Howard, Kan., for plaintiffs.

Vincent F. Hiebsch, of Wichita, Kan. (Fred B. Stanley, of Wichita, Kan., and J. B. Patterson, of Okemah, Okl., on the brief), for defendants.

⬾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before LEWIS, Circuit Judge, and BOOTH and SYMES, District Judges.

LEWIS, Circuit Judge. This suit was begun July 26, 1922, by Blaxter and Mitchell, appellees in No. 6435 and appellants in No. 6436, to quiet their title as lessees in three 40-acre tracts in Elk County, Kansas. The lease covered 400 acres. It was given by Hyde and wife, appellants in No. 6435 and appellees in No. 6436, in 1918, for a term of five years and as long thereafter as oil or gas is produced from the land by the lessee. The lease contains this clause:

"On January 1st, 1922, each and every forty-acre tract that has not been developed to the extent of one finished well shall revert to the lessor and the lease on these undeveloped forty-acre tracts shall become null and void."

[1] Seven wells on seven different 40 acres had been put down, and the eighth well on what is called the eighth 40-acre tract was very close to completion on January 1, 1922. It had been started in time to complete it before that date, and it would have been completed within the time limited, but for unusual conditions not to be anticipated or guarded against. A very few days' work after January 1st completed it. It had cost about $15,000 to drill it. The ninth and tenth 40 acres had not been drilled, as the lease required, prior to January 1, 1922. The lessees insist that they should be protected against forfeiture on all three of the 40-acre tracts and the lessors insist that forfeiture should be enforced as to all of them. The trial court sustained the lessees' right to the 40 acres on which the eighth well was put down, but denied any right in the lessees to tracts 9 and 10, holding that they had been forfeited. Both conclusions seem to us to be right. As to the eighth 40-acre tract on which the well had been substantially completed on January 1st, there can be no just reason assigned in a court of equity on which a forfeiture would be enforced or permitted. There was reasonable compliance as to that 40 acres, and the chancellor could not permit the dry letter to override the substance and purpose of the contract. But the clause of the lease quoted above should be construed, we think, after reading all other relevant provisions, as having the effect of treating each 40 acres separately for purposes of development; and it requires that each 40 should be drilled upon, and if a well was not completed on any of the 40's by January 1, 1922, the lease as to the particular 40 so undrilled should be null and void. Prior to January 1, 1922, the lessees had spent more than $150,000 under their lease in developing the property, and their claim is that this should hold the entire 400 acres from forfeiture. But no expenditure in drilling on the ninth and tenth 40-acre tracts had been made. There is also claim that the lessors acquiesced in the lessees' right to drill on the 9th tract after January 1st, but we can hardly attribute that meaning to what it is claimed one of the lessors said. We discover no facts that would give the lessees equitable right of protection against forfeiture on tracts 9 and 10, in view of the quoted clause.

[2] Prior to bringing this suit the lessors brought an action in the State district court of Elk County under the Declaratory Judgment Act of that State (Laws 1921, c. 168) for an interpretation of the lease con-

tract and the establishment of its meaning. The proceeding there is plead in bar here by the lessors as res adjudicata. That court in its decree entered June 10, 1921, set out the clause of the lease quoted above and then declared:

"This provision is exceedingly plain and clearly means that there must be one well finished on each unit referred to in said lease of forty acres, or said unit of forty acres not so developed and improved would be forfeited and would revert to the lessor, said lease pertaining to each forty acres remaining so undeveloped would become null and void as to that unit."

After January 1, 1922, the lessors filed in that court their petition for its writ of assistance to put the lessees out and the lessors into possession of the eighth, ninth and tenth 40-acre tracts. The writ was denied for these reasons, as shown by the record:

"That the question as to whether or not the lessees were complying with the terms of said lease was not presented to the (that) court. That the only question presented was as to the construction of certain portions of the lease as to what they meant. That is as far as the declaratory judgment affected the lease."

As we view it, all that was done by the State district court was to make a declaration of record that the meaning of the lease was clear and it meant what it said as to development on each 40-acre tract. We see nothing in those proceedings, however, that operates as a bar to adjudication on the issue of forfeiture presented in this suit. We construe the lease as the State court did. To that extent there may be res adjudicata. Copy of the petition in the State district court is brought here, and from it it appears that the lessees there contended, and only contended, that there was conflict and disagreement between the clause of the lease that has been quoted above and other parts of the lease, and the only purpose of that proceeding was to obtain from the court an interpretation of the lease, whether the quoted clause prevailed or whether it was annulled or modified by other parts of the lease. There were other alleged ambiguities and inconsistencies in the lease submitted to that court for its solution and interpretation. No question or issue of forfeiture as to any of the 40-acre tracts was there under consideration. And obviously, the issue here presented could not have been considered or adjudicated, because that procedure and the findings of the court there made were several months prior to January 1, 1922. This suit, then, while between the same parties, is upon a different cause of action and presents a controversy on facts lying outside the lease and resting in parol that could not have been litigated or decided there. The action of the State court is in no sense res adjudicata of the controversy here. Hottelet Co. v. Garden City Milling Co. (C. C. A.) 285 Fed. 693, 696.

[3] Hyde and wife filed in addition to answer a crossbill against the lessees, Blaxter and Mitchell, wherein they alleged that neither of the three 40-acre tracts had been developed to the extent of one finished well prior to January 1, 1922. They prayed that the lessees be enjoined from drilling or doing any development work on either of those tracts and from taking any oil from the well on tract 8, that the lease be cancelled as to the three 40-acre tracts, that the lessors have possession thereof and their title thereto quieted against the lessees. They further

alleged that under certain named sections of the statutes of Kansas it became the duty of the lessees to file with the register of deeds a written release of the lease which they held as to the three 40-acre tracts, because of the fact that a finished well had not been drilled on either of them prior to January 1, 1922; and for that failure they asked judgment for damages against the lessees and for attorney's fees. The first section of the statute relied on for recovery of damages provides (section 4993, Gen. St. 1915) that when an oil, gas and mineral lease is recorded with the register of deeds it shall impart notice of the validity and continuance of the lease for the definite term therein expressed but no longer, that if such lease contains a statement of any contingency upon the happening of which the term of any such lease may be extended (such as, "and as much longer as oil and gas or either is produced in paying quantities"), the owner of the lease may at any time before the expiration of the definite term file with the register an affidavit setting forth, among other things, that the required contingency has happened. This affidavit when filed is declared to be "notice to the public of the existence and continuing validity of the said lease until the same shall be forfeited, cancelled, set aside or surrendered according to law." The next section (section 4994) provides, that in the event the owner of the lease neglects or refuses to execute a release as provided by this Act, then the owner of the leased premises may sue in any court of competent jurisdiction to obtain the release and may recover in such action of the lessee or his assigns the sum of $100 as damages, and costs, together with reasonable attorney's fee, and any additional damages that the evidence in the case will warrant; and by the following section (section 4995) that at least twenty days before bringing the action the owner of the land shall demand of the holder of the lease that the lease be released of record.

The lease here bears date October 24, 1918. By its terms it was to "remain in force for a term of five (5) years from this date and as long thereafter as oil and gas or either of them is produced from said land by the lessee." Five years was the definite term of the lease referred to in the statute. That term would not expire until October 24, 1923. The lessors made written demand of the lessees in July, 1922, that they release the lease of record. That demand is a prerequisite to the bringing of an action for damages under the statute. It was made prior to the expiration of the definite term of the lease; and the crossbill was filed prior to the expiration of that term. That is the term with which the statute deals as the basis from which to determine when and whether a release must be executed; and not some other and indefinite term to be ascertained by facts and circumstances dehors the lease. So far as the statute goes it recognizes the validity of the lease for the definite term expressed in it, and points out the steps that may be taken to extend that definite term on the contingencies named; but it designates no procedure, either by lessee or lessor, by which that definite term may be shortened for the purpose of recovering damages and the penalties named in the Act. Its purpose seems clear. It applies to leases for definite terms which may be extended upon the happening of named contingencies and the contingency does

not happen. If it happens, it provides a way to show that fact, and the term of the lease is thus extended. It indulges the presumption that the contingency has not happened if the showing is not made, and on that presumption exacts the release. Damages are prima facie recoverable under those conditions. So viewed, the statute may be considered a reasonable one. As we view it, the right of action which the statute gives can be maintained only on the facts and under the conditions which it names, and the facts in this case do not come within the requirements of the statute. It does not pretend to make the remedy it gives exclusive, and there can be no doubt of the right to sue for cancellation or rescission and forfeiture regardless of the statute. It does not and could not require a lessee to surrender a claimed right without a hearing, except on the limited conditions named. That would not be due process.

It is argued by counsel for the lessors that the Supreme Court of Kansas has given a broader construction to the statute which permits recovery under the statute of damages and the named penalties, where the lessor claims that the lease has been forfeited for any reason, whether within the express terms of the statute or not. We are cited to Cole v. Butler, 103 Kan. 419, 173 Pac. 978; Elliott v. Crystal Springs Oil Co., 106 Kan. 248, 187 Pac. 692; Mollohan v. Patton, 110 Kan. 663, 202 Pac. 616, 205 Pac. 643. In the Cole Case the gas and oil lease was given for a term of twenty years. The court said:

"Under the pleadings and facts apparent therefrom, nothing had been done under the lease for 13 of its 20 years duration; neither was there any intent or disposition indicated to do anything. This situation entitled the plaintiff to a decree of cancellation. The parties seem to have acted under the provisions of" the statute "relating to the record, forfeiture, and surrender of oil and gas and other mineral leases."

It thus appears that the question as to whether or not the action was appropriately brought under the statute was not raised, and the court did not construe the statute. It accepted the acquiescence of the parties that the action was under the statute. In the Elliott Case the lease was given for a definite term of five years "and as long thereafter as oil and gas or either of them is produced from said land by the party of the second part." For all that appears in the opinion the definite term of five years had expired before notice was given to the lessee and the action brought, and there was no compliance with the statute permitting a showing that the contingencies had happened on which the lease could be extended. In fact, it appears that the contingencies did not exist. In Mollohan's case the full terms of the lease are not shown. It is referred to only as an oil and gas lease. It does not appear whether it was given for a definite term of years. There was a supplemental contract about drilling "another well on said premises" on or before a certain day. The lessee did not comply with that requirement. The court held, "In the absence of some agreement to the contrary the defendant's rights with respect thereto were lost when he failed to carry out this provision of the contract." The court said the action was brought under the statute here relied on. The opinion does not disclose whether a definite term was given by the lease and had expired, nor does it appear that the defendant contested the right

of the plaintiff to maintain her action under the statute. Apparently the only controverted question brought to the attention of the court was whether or not a sufficient notice demanding that the lessee release the lease of record had been given prior to the institution of the action, and whether the trial court erred in holding the testimony offered by plaintiff to be a sufficient basis for the actual damages assessed. We are, therefore, not convinced that the Supreme Court of Kansas has construed the statute in the respect in which it is now being considered.

[4, 5] Furthermore, a proceeding under the statute to recover damages is an action at law and not a proceeding in equity, hence the lessor could not set up such a claim in his crossbill. Equity Rule 30 requires that a counterclaim cannot be set out in a cross-complaint, unless it be the subject of an independent suit in equity against the plaintiff. American Mills Co. v. Surety Co., 260 U. S. 360, 43 Sup. Ct. 149, 67 L. Ed. 306. For other cases in which the rule has been considered, see Victor Talking Machine Co. v. Brunswick-Balke-Collender Co., (D. C.) 279 Fed. 758. It is true that the crossbill in form seeks equitable relief in addition to the statutory damages, but the complaint and the answer thereto were of sufficient scope to enable the court to give the equitable relief to which either party might be entitled; and we think it clear that the substantive purpose of the crossbill was only for recovery of damages. That is made evident by the lessors' assignment of errors, three in all, that the court erred in (1) holding that the lessees held good title under the lease to the eighth 40-acre tract, (2) in holding that the lessors were not entitled to recover damages under the State statute, and (3) in holding that they were not entitled to recover attorney's fees under the statute. In case No. 6435 the costs will be adjudged against appellants, and in No. 6436 against appellees.

Affirmed.

---

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes