Argued January 26; affirmed March 20; rehearing denied
April 24, 1934

# MICKEL *v.* ASSOCIATED OIL COMPANY

(30 P. (2d) 352)

*Clarence J. Young,* of Portland (Dey, Hampson & Nelson and Herbert L. Swett, all of Portland, on the brief), for appellant.

*Guy O. Smith,* of Salem, for respondent.

BELT, J.   This is an action to recover rental. The plaintiff alleges that on or about June 1, 1929, he entered into a written lease with the defendant oil company whereby the latter agreed to lease a certain gasoline filling station at Mt. Angel, Oregon, for a term commencing February 21, 1929, and ending February 20, 1932. Under the provisions of this lease the lessee agreed to pay the plaintiff lessor as rental "a sum equal to three cents (3) for each gallon of gasoline sold to Lessor by Lessee during the preceding month for resale from said premises, and for which Lessor has paid Lessee in accordance with license agreement between them of even date herewith, minimum rental of Ten Dollars ($10.00) a month to be paid in any event. Amount of rentals shall be credited on account of payments due (if any) by Lessor for products purchased from Lessee". It was also provided therein that "This lease supersedes and cancels any previous lease of said property between the parties hereto or their predecessors in interest." The evidence shows that the execution of this lease was acknowledged before a notary public on June 1, 1929. On the same day that the lease was made the parties entered into a license agreement whereby the plaintiff as licensee agreed to operate the above mentioned filling station exclusively for the purpose of reselling to consumers petroleum products purchased by him from the defendant oil company. In this license agreement it was provided that the "LICENSEE agrees to pay LICENSOR for all gasoline at LICENSOR'S posted

market price for gasoline (including tax), to consumers generally at place of delivery on the date of delivery, (said posted price as of date hereof being 19 cents for ASSOCIATED GASOLINE, and 22 cents for ASSOCIATED ETHYL GASOLINE) less LICENSOR'S posted differential to resellers generally at place of delivery on date of delivery (which differential on date hereof is four cents (4c) per gallon), it being agreed that said differential shall be not less than four cents (4c) during the period of this License."

Plaintiff alleges that "between the 1st day of June, 1929, and the 1st day of July, 1931, the defendant therein sold and delivered to the plaintiff, Seventy-eight thousand seven hundred and sixty (78,760) gallons of gasoline to be resold by said plaintiff from the premises above described, and said plaintiff actually resold all of said gasoline from said property during said time, selling each month during said period, the amount, or practically the amount sold and delivered to plaintiff by said defendant and plaintiff has kept and performed each and every part of the above contract to be kept and observed by him". It is finally alleged by plaintiff that "the defendant has not paid plaintiff 3 cents per gallon, or any other sum, for any of the gasoline so sold as above mentioned, and there is now due, owing and unpaid on account of said lease or contract and said sales as above set forth, the sum of $2362.80, at 3 cents per gallon on Seventy-eight thousand seven hundred and sixty (78,760) gallons of gasoline".

Defendant admits the execution of the lease and the license agreement, but alleges a modification thereof by virtue of a written agreement dated May 20, 1929, purporting to be effective June 1, 1929, whereby the

plaintiff agreed to pay the defendant for all gasoline purchased "the posted tank wagon price (including tax) as posted by the majority of the five principal marketing companies at their principal place of business, covering Gasoline for sale at place of delivery on date of delivery, on which basis as of date hereof you would pay 21 cents per gallon for ASSOCIATED GASOLINE and 24 cents per gallon for ASSOCIATED ETHYL GASOLINE". It was also provided in this alleged modification agreement, which defendant asserts was executed shortly after the lease and license agreement, that "in lieu of the rental specified in lease between us covering the same property, we will pay you as rental, commencing June 1, 1929, four cents (4c) for each gallon of Gasoline sold by us to you for resale from said premises". It was further alleged by defendant that "commencing with the 1st day of June, 1929, and continuing to and including July 1, 1931, defendant sold to plaintiff, to be resold by plaintiff from the premises covered by said lease, as modified aforesaid, a total of 76,775 gallons of gasoline. That all of said gasoline during said period was invoiced by defendant to plaintiff at the time of delivery upon the basis of the price fixed in said modification agreement, 'Exhibit C'. That continuously during said period defendant paid to plaintiff and plaintiff accepted from defendant rentals on the basis of four cents per gallon, as provided for in said modification agreement, 'Exhibit C', said rentals being paid in the form of credit allowances endorsed on said invoices. That during said period defendant paid to plaintiff and plaintiff accepted from defendant, in the form of said credit allowances, the sum of four cents on each of said 76,775 gallons of gasoline, or a total of three thousand, seventy-one and 00/100 dollars

($3,071.00) on account of rentals. That plaintiff was thereby paid in full by defendant for rentals on said premises during the aforementioned period''.

The plaintiff in his reply denied the affirmative matter pleaded in the answer.

On these issues the cause was submitted to a jury and a verdict returned in favor of plaintiff for $2,362.80 and interest. Defendant appeals.

■ There was no error in denying the motion for a directed verdict. Since there was no dispute in the evidence regarding the number of gallons of gasoline delivered to the plaintiff, the issues of the case were simple and direct. What was the contract? The evidence was in conflict as to when the modification agreement was executed. The plaintiff asserts that it was executed on or about the date it bears, viz., May 20, 1929. The defendant contends that it was executed contemporaneously with the lease and license agreement, viz., on June 1, 1929. The jury found against the defendant on this issue. It follows then that the rights of the parties are to be determined not by the modification agreement but by the provisions of the lease and license agreement upon which the plaintiff relies. Force and effect must be given to that clause of the lease which provides that any previous lease is superseded and cancelled.

■ Under the contract as alleged by plaintiff, he was entitled to be paid as rental a sum equal to three cents for each gallon of gasoline purchased from the defendant and, by virtue of the license agreement, he was entitled to buy the gasoline at the ''posted market price'' less a differential allowed to resellers, amounting to at least four cents per gallon. The defendant alleges payment of the rental and, to establish this

affirmative defense, introduced numerous delivery tickets given by the tank wagon men to the plaintiff upon delivery of the gasoline. It appears upon the face of these delivery tickets that the gasoline was sold at the posted tank wagon price with an allowance of credit of four cents per gallon on account of rentals. It further appears upon the face of these tickets, over the signature of the purchaser, that "the undersigned purchaser hereby acknowledges receipt of the above products and agrees that the quantities, prices and amounts charged as stated herein are correct, and further agrees to pay Associated Oil Company the value of any returnable steel drums shown above which are not returned in good condition on demand". Hence it is argued by the defendant that these delivery tickets show conclusively a payment of the rentals. We cannot agree with this contention. These tickets are in the nature of receipts and are subject to explanation. They do not contain all of the elements of the contract between the parties and, in fact, the credit allowance for rentals and the tank wagon price as stated therein are in conflict with the terms of the contract found by the jury to be subsequent to the modification agreement, and upon which plaintiff relies. *Milos v. Covacevich,* 40 Or. 239 (66 P. 914), is not in point. If the testimony of the plaintiff is to be believed, some controversy arose as to the meaning of credit allowance for rentals. Apparently plaintiff was at a loss to understand how he was being paid for rental when he was entitled, under his contract, to purchase the gasoline at a differential of four cents less than the posted market price. We conclude that, while these delivery tickets may tend strongly to establish the contention of the defendant that the modification agreement was controlling, they are not to be accepted as conclusive rela-

tive to the question of the payment of rentals. It was the contention of plaintiff that the four cents allowance for rental as stated on delivery slips was, in fact, a differential allowance of four cents.

Defendant relies upon *Shell Oil Company v. Miller,* 53 Fed. (2d) 74, wherein it was held that a buyer of gasoline could not recover excessive payments voluntarily made over a considerable period of time without complaint. We are not concerned with the law applicable to voluntary payments. In the instant case plaintiff is not seeking to recover an overcharge. It is an action to recover rentals alleged to be due and of which the defendant claims payment.

■ It is claimed that error was committed in permitting the plaintiff on redirect examination to give his understanding of the meaning of ''tank wagon price''. In response to the question as to what the tank wagon price meant, plaintiff answered, ''Well at all service stations, what we understand by the tank wagon price is four cents less, as a rule, than what we resell the gas for, at the station.'' We agree with counsel for appellant that the posted tank wagon price was defined in the modification agreement relied upon by defendant and that it was not within the province of the plaintiff to give a meaning to these terms at variance with the definition of the same as set forth in the contract. It will be recalled that it was the contention of the plaintiff that the modification agreement was cancelled and that, as a matter of fact, there was no occasion for him to discuss the meaning of ''tank wagon price''. However, on cross-examination, counsel for defendant asked plaintiff the meaning of tank wagon price and also the difference between the posted retail price and the tank wagon price. In view of this

cross-examination, it was not error on redirect examination to inquire of the plaintiff about the meaning of these rather confusing terms.

■ Error is assigned because of the refusal of the court to give the following requested instruction:

"There is but one issue in this case and that is whether or not plaintiff has been paid the rental required under the lease executed between the parties. There is no issue in this case bearing on the purchase price of gasoline sold to the plaintiff by the defendant, and it is not for you to consider any disagreement on that score, or whether, in your opinion, the defendant was over-paid or under-paid for gasoline sold. The purchase price of gasoline is not in issue."

This instruction if given by the court might have been misleading to the jury as one of the principal issues pertained to the time of the execution of the contracts as claimed by the plaintiff and by the defendant. Furthermore, we think the issues of the case were clearly and concisely stated by the trial court, relative to the question of payment.

■ There are several other assignments of error but we think none of them justify a reversal of the judgment. It is simply a case where the jury decided against the defendant upon a question of fact and, since there is evidence to support the verdict, it follows that the judgment of the lower court is affirmed.

RAND, C. J., and ROSSMAN and KELLY, JJ., concur.