THE LOCOMOTIVE ENGINEERS MUTUAL LIFE AND ACCIDENT INSUR-
ANCE ASSOCIATION, Plaintiff, *v.* MELISSA I. LOCKE, Appellant,
Impleaded with GEORGINA PUTNAM, Respondent.

Fourth Department, May 12, 1937.

*Walter F. Hofheins*, for the appellant.

*George E. Phillies*, for the respondent.

LEWIS, J.   By its complaint in this interpleader action the relief
sought by the plaintiff insurer is " That the plaintiff may be ordered
and directed to pay the amount of the proceeds of said policy of
insurance, to wit, the sum of $1,369.50, into court, and that the
said defendants, and each of them, may be ordered and decreed to
interplead and settle between themselves the rights or claims to
the money due under said policy of insurance."   Upon issues
framed by answers interposed by the two defendants — each of
whom lays claim to the proceeds of the policy in suit — judgment
has thus far proceeded in favor of the defendant Georgina Putnam.

On March 28, 1918, the plaintiff insurance association issued to Earl Locke, now deceased, a certificate of life insurance — " Certificate No. 224165 "— in which his wife, the defendant Melissa I. Locke, was named as beneficiary. Thereafter, on June 2, 1927, while the certificate of insurance was still effective, the assured and his wife executed a separation agreement containing among other covenants, the following: " 9. The husband   *   *   *   represents that he has heretofore insured his life for $1500.00 in Locomotive Engineers Mutual Life and Accident Insurance Association under Certificate No. 224165, Division No. 533, dated March 28th, 1918, payable to Isabel Locke [Melissa I. Locke], wife;   *   *   * and the husband in order to provide for the separate support and maintenance of the said wife, after his death, will cause the said policies of insurance to be assigned to the wife in the event that said policies are not already and now payable to the wife, and the husband covenants and agrees that he will at all times hereafter maintain said insurance above mentioned in full force and effect in favor of the wife, and that he will promptly and punctually pay the premiums thereon as and when they and it shall severally become due and payable."

The defendant Locke now claims that by this agreement she acquired for value a vested interest in the insurance represented by the original certificate and that the agreement constituted an equitable assignment of such insurance, thus depriving the assured of his right to subsequently change the beneficiary.

Following the execution of the separation agreement the assured and his wife lived apart until his death. Meantime he had taken up his residence as a boarder at the home of the defendant Georgina Putnam. In support of Mrs. Putnam's present claim she asserts that in September, 1933, at the instance of the assured and upon his oral agreement that he would protect her financially during her lifetime and would make available to her the proceeds of his life insurance in the event of his death, she sold at less than its true worth a confectionery business which she had conducted for a number of years. With the proceeds from this sale she established a boarding house where the assured lived until his death.

It also appears that in 1933 the constitution and by-laws of the plaintiff insurance association were amended to accomplish an increase in premium rates. As an incident to this change the plaintiff association required that all certificates then outstanding should be surrendered in exchange for new certificates to be issued either for the same amount of insurance — which called for an assessment for the increased premium — or for insurance in an amount less than the original certificate if the member chose to

pay the old premium rate. To make such a change in the instance of certificate No. 244165, which was still effective and held by the assured, one of plaintiff's representatives called upon him at the home of the defendant Putnam. At that time the assured stated in her presence that although Mrs. Putnam was not related to him by blood, she was dependent upon him and that " he had promised to see [her] through." He stated further that he would accept a new certificate from the plaintiff in the event the defendant Putnam was named as beneficiary. A new certificate was later issued by the plaintiff in accord with the assured's instructions and is the basis of the defendant Putnam's present claim as the beneficiary named therein.

Our determination of the issues between these two interpleaded defendants turns upon the question whether the defendant Locke acquired under the separation agreement of 1927 a vested interest in the insurance which the original 1918 certificate represented, sufficient in law to survive the issuance by the plaintiff in 1933 of the new certificate upon which rests the present claim of the defendant Putnam.

It must be conceded at the outset that legal consideration for the separation agreement of 1927 is afforded by the mutual covenants expressed within its terms. We also find in the agreement a covenant by the assured at all times thereafter to maintain the insurance in full force and effect in favor of the defendant Locke — " in order to provide for [her] after his death."

We regard this contract and its legal effect upon the insurance which is the subject of this action as controlled by the rule in *Stronge* v. *Knights of Pythias* (189 N. Y. 346, at p. 351): " Thus assuming that a contract was made by a member for a valuable consideration to take out a certificate for the benefit of appellant, it seems to us very clear that after the certificate has been taken out and the consideration fully furnished by the beneficiary, the member will not be allowed to destroy the rights of his creditor by a new certificate naming a new beneficiary. We do not regard the by-laws and provisions of the certificate or the authorities called to our attention providing for and upholding the right of a member to change the designation of his beneficiary as often as desired without the consent of the latter as at all applicable to such a case as this. They relate to a case where voluntarily and gratuitously designation has been made of a beneficiary who, in the language of the certificate, has acquired ' no interest whatever in the certificate nor in the indemnity fund.' But can there be any doubt that a member of one of these associations might say to a person that if the latter would loan him a thousand dollars he, the member, would

take out a certificate designating the creditor as beneficiary as security for such loan, such designation not to be canceled or changed without the consent of the creditor, and that this contract and agreement would estop and prevent the member from changing the designation whatever might be the ordinary privileges and regulations as between him and the association when no rights of a third party had intervened? While the agreement detailed by appellant is not in terms as complete as the one assumed, we think it is just as effective, because what the parties have omitted specifically to say as between themselves the law says for them. [The assured] agreed that he would procure the certificate to be issued designating appellant as beneficiary if she and her husband would establish a new home, take him with them and care for and nurse him in his sickness. The appellant performed her part of the contract and [the assured] performed his so far as procuring the certificate to be issued was concerned, and *the law now prohibits him from destroying the rights which appellant has acquired in the certificate for a valuable consideration.*" (See, also, *Conselyea* v. *Supreme Council Am. L. of H.*, 3 App. Div. 464, 470; affd., 157 N. Y. 719; *Smith* v. *National Benefit Society*, 123 id. 85, 88; *Webster* v. *Welch*, 57 App. Div. 558, 561; *Tidd* v. *McIntyre*, 116 id. 602, 612, 613; *Zies* v. *New York Life Ins. Co.*, 237 id. 367, 370, 371.)

Applying this rule to the record before us, we conclude that the separation agreement of 1927 was sufficient in law to vest in the defendant Locke the right to the insurance represented by the original certificate. Thus acquired, her vested interest was not lost in 1933 when, by reason of the amendment of plaintiff's constitution and by-laws, a new certificate was issued in which the assured chose to designate a different beneficiary.

The insurance represented by the new certificate was not new insurance. The record indicates that the reason for the 1933 amendment of plaintiff's constitution and by-laws and the incidental issuance of new certificates of insurance was to bring about an increase in premium rates. This is made clear by testimony by plaintiff's secretary and treasurer who also defined the relation between the old and new certificates: " Q. Now, as a matter of fact, Mr. Heisenbuttle, the only real change there was by virtue of this change in the constitution and the shifting over from the old certificates to the new was that under the new classification there was a change in the premium rate? A. That is the only difference. * * * Q. The old certificates had to be surrendered? A. Yes. Q. The new certificate was issued in substitution for the old one? A. Yes, you had to have the old one in order to get the new one."

The rights of the assured and those of the defendant Locke — the sole beneficiary — were not cut off by the surrender of the original 1918 certificate and the substitution of the new one in 1933. On the contrary, plaintiff's amended by-laws of that year provided: " Each member of this Association in good standing and holding a Certificate of Insurance issued prior to October 1, 1933, *shall have the option to surrender and exchange* such Certificate for a new Certificate of a Class A form providing an equal or less amount of insurance upon any plan issued by the Association. *Such exchange shall be made without renewed evidence of insurability* upon the basis of the attained age of such member on the date of such exchange, and upon payment of the premium rate applicable to the plan and amount applied for."

This provision for the " exchange " of old certificates for new does not import a forfeiture of vested rights attaching to those of prior issues as claimed by the defendant Putnam; rather did it endow prior certificate holders with rights and privileges not accorded to those who acquired new insurance from the plaintiff after October 1, 1933. That vested rights acquired by contract and attaching to the old certificates were preserved and made effective under the amended constitution of 1933 is made clear by the following provision: " § 22. * * * (b) All liens heretofore created by any By-Law and/or *by contract of the members with* either this Association or the Brotherhood *or any other person* or persons *shall be and are hereby preserved* as existing and continuous liens on the proceeds of the Certificate and shall be deducted therefrom."

Our conclusion thus reached makes it unnecessary to determine whether the status of the defendant Putnam was that of a " dependent " of the assured and thus qualified within plaintiff's by-laws as one who could be named as a beneficiary under its policy.

It appears from the record that in accord with a Supreme Court order in this action the amount due under the policy in suit has been paid into court by depositing the same with the Erie county treasurer (less the sum of seventy-five dollars retained by the plaintiff, in accord with a stipulation by all parties to this action, in payment of plaintiff's counsel fee and disbursements herein) and that the plaintiff has been discharged from further liability. Accordingly the judgment from which appeal is taken should be reversed on the law and facts, and judgment granted adjudging that the defendant Melissa I. Locke is entitled to the proceeds of said policy of life insurance and directing the county treasurer of Erie county to pay to the defendant Melissa I. Locke the proceeds of said policy heretofore paid into court by order of the Supreme

Court in this action, with interest from November 12, 1935.    Certain findings of fact and conclusions of law are reversed and new findings made.

All concur.    Present — SEARS, P. J., EDGCOMB, CROSBY, LEWIS and CUNNINGHAM, JJ.

Judgment, so far as appealed from, reversed on the law and facts, with costs to appellant against respondent Putnam, and judgment directed in favor of appellant adjudging appellant to be the owner of the fund and directing its payment to her by the county treasurer, with costs to the appellant against respondent Putnam.    Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.    Settle order before LEWIS, J., on two days' notice.