PRUDENTIAL INS. CO. OF AMERICA v. RADER et al. (Rader, third party defendant).

Civ. No. 2897.

United States District Court
D. Minnesota, Fourth Division.

May 23, 1951.

David Shearer and Shearer, Byard, Trogner & Peters, all of Minneapolis, Minn., for plaintiff.

Robert M. Bowen and Bowen & Bowen, all of Minneapolis, Minn., for defendants and cross-complainants Sophia V. Rader, John Rader, Anna Belle Engbring and Dorothy Rader Welte.

Reese J. McGee and W. J. Giberson, of Saint Paul, Minn., for defendant and cross-complainant, Nellie P. Rader.

NORDBYE, Chief Judge.

On or about February 18, 1929, one Wilber C. Rader, hereinafter called Wilber, purchased a $10,000 life insurance policy from the Prudential Insurance Company of America. He named his wife, Sophia V. Rader, hereinafter called Sophia, as the the primary beneficiary of the policy. She at all times herein lived in Minnesota. In 1937 Wilber and Sophia separated and thereafter lived apart. In 1941 they entered into a property settlement agreement because of the divorce action commenced by Wilber and pending in Florida. In that property settlement agreement Wilber contracted, among other things, as follows: "In further consideration of the covenants herein contained, it is agreed that the said W. C. Rader will provide, in accordance with law, a beneficiary provision in his insurance policy taken out with Prudential Insurance Company of America, whereby the said three (3) children, namely John Rader, Anna Belle Rader, and Dorothy Rader, shall upon the death of W. C. Rader, receive the proceeds of the insurance policy amounting to Nine Thousand ($9,000.00) Dollars, in equal shares, with the provision that the same will not be paid to said children until they respectively reach thirty (30) years of age, with the exception that certain amounts may be withdrawn for their benefit each year provided such child or children are enrolled as students in a college or University, which amount shall be paid in accordance with the beneficiary

provision in said policy, and amounting to no more than Three Hundred and Forty-five ($345.00) per year for each child, and in the event that any of said children die while any amount of said balance is due and payable to such child, then this amount shall be payable forthwith in equal shares to such of said children as may be living, if any, otherwise to the executors or administrators of the last to die of said children, and it is specifically arranged in said policy that the beneficiary cannot be changed."

The divorce was granted to Wilber C. Rader by the Florida court in a default proceeding on or about May 10, 1941. The property settlement was not incorporated in the divorce decree or referred to therein. After the divorce was granted, Wilber changed the beneficiary of his insurance policy to his children but reserved the right to borrow upon the policy. Consequently, the insurance company refused to endorse the beneficiary change on the policy as an irrevocable one.

In 1947 Wilber decided to change the beneficiary of the policy from his children to Nellie Rader, one of the defendants herein, whom he had married subsequent to his divorce from Sophia, and hereinafter called Nellie. When Prudential refused to make the endorsement upon the policy, Wilber commenced a declaratory judgment action in Florida. Originally he named only Prudential as defendant. Then by amendment he named Sophia, John, Anna Belle, and Dorothy as defendants also. Prudential was served in Florida, but Sophia, John, Anna Belle, and Dorothy were non-residents of Florida and were served by publication and by mailing summonses to them. They entered no personal appearance and defaulted. A decree "pro confesso" was entered against them. The Florida court ordered the Prudential to endorse upon the policy the change of beneficiary to Nellie, and the company obeyed the order. Shortly thereafter Sophia commenced an action in Minnesota against Wilber to require him to comply with the terms of the contract between them, with respect to the insurance policy and the beneficiaries therein named. Personal service was obtained upon him in Minnesota. But he died before that action could be tried. When both Nellie and Wilber's children (John, Anna Belle, and Dorothy) claimed the proceeds of the instant insurance policy, Prudential filed this complaint in interpleader in this Court to determine which parties are entitled to the proceeds.

Nellie Rader contends that the change of beneficiary by Wilber to her was proper, that the property settlement agreement between Sophia and Wilber was void and that the Florida court's declaratory decree was binding upon the parties to this proceeding and is res adjudicata of the issues presented here. These contentions by Nellie raise the principal issues of this case.

Persuasive authorities hold that the promisee of a valid contract by which the insured promises to make the promisee an irrevocable beneficiary of an insurance policy carried by the insured upon his own life can recover the proceeds of the policy after the insured's death as against a person who was expressly and gratuitously named the beneficiary of the policy subsequent to the making of the contract with the promisee. Thomson v. Thomson, 8 Cir., 1946, 156 F.2d 581, certiorari denied 329 U.S. 793, 67 S.Ct. 370, 91 L.Ed. 679, rehearing denied 329 U.S. 833, 67 S.Ct. 501, 91 L.Ed. 706; Metropolitan Life Ins. Co. v. Richardson, D.C.La.1939, 27 F.Supp. 791; Kansas City Life Ins. Co. v. Jones, D.C.Cal., 1937, 21 F.Supp. 159; Stockwell v. Reid's Estate, 170 Mich. 476, 136 N.W. 476. Counsel for Nellie cite no sound authority to the contrary, and urge instead that the settlement contract here is void. The general rule noted applies in interpleader cases like the instant one, for by bringing the interpleader action and depositing the insurance money with the court, the insurance company waives its right to insist upon compliance with the terms of the policy, including the company's right to pay the money to the beneficiary named in the policy. Thomson v. Thomson, supra; Kansas City Life Ins. Co. v. Jones, supra; Metropolitan Life Ins. Co. v. Richardson, supra.

■ Consequently, John, Anna Belle, and Dorothy may recover the proceeds here up to $9,000 as against Nellie Rader if the property settlement contract between Sophia and Wilber is valid and the Florida court's declaratory order is not adversely res adjudicata of the issues herein. For the provision of the settlement contract governing disposition of the insurance policy, and which is quoted above, obviously was made with the intent to benefit the children. Consequently, they were third party donee beneficiaries of that provision of the contract and can enforce their rights as such. La Mourea v. Rhude, 1938, 209 Minn. 53, 295 N.W. 304. Sophia may also maintain an action as a party to the contract in order to obtain the insurance funds for the third party beneficiaries of her contract with Wilber. But she is entitled to none of the proceeds under the terms of that contract.

■ Nellie urges that the property settlement contract between Wilber and Sophia is void en toto upon the theory that it was a contract concerning realty made during coverture. Minnesota law forbids such transfers, and contracts including such provisions are void en toto if the contract's valid provisions are not separable from the invalid ones. Simmer v. Simmer, 195 Minn. 1, 261 N.W. 481. But here the stipulation regarding the transfer of the homestead is clearly separable from the remaining covenants. And Minnesota does permit a husband and wife to execute a contract with reference to property settlements which are connected with a divorce proceeding pending between them. Nelson v. Vassenden, 1911, 115 Minn. 1, 131 N.W. 794, 35 L.R.A.,N.S., 1167. Florida also appears to follow the same rule, Gallemore v. Gallemore, 94 Fla. 516, 114 So. 371, 372, which is supported by many courts. 17 Am. Jurisprudence, Div. and Sep., § 499. The property settlement contract was signed by Sophia in Minnesota.

■ In the instant case, the contract seems clearly to have been executed with reference to the divorce proceedings and to have been intended to take effect after the obtaining of the decree which might be entered. The fact that the contract was not incorporated into the Florida decree does not change this intent with which the contract was made. Nor does it deprive Sophia and the children of the rights created by the contract. It merely requires them to rely upon the contract rather than the court order.

That the settlement contract was entered into in contemplation of the divorce decree which might be entered by the Florida court is apparent from the contract's preamble, which states the pendency of the divorce decree as the main reason why the property settlement contract was being executed. Moreover, correspondence between counsel for Wilber and Sophia and between Wilber and Sophia establishes that the contract was related to the divorce proceedings. The question of incorporating the contract in the decree was discussed, and all obviously assumed that the settlement would not take effect before the divorce was effective. In fact, the paragraph of the contract which relates to transfer of the homestead to Sophia from Wilber provides expressly that the transfer would take place within five days after the divorce was granted. Other paragraphs of the contract also were to be performed in the future, for by the nature of their subject matter and provisions, they did not constitute immediate transfer of property to Sophia.

Nellie points to the paragraph of the contract by which Sophia releases all her interests, rights and claims in Wilber's property. But that paragraph does not declare specifically the date on which that release would take effect. It merely states that she released her interest by the agreement. And part of the consideration for that promise was the conveyance of the homestead to Sophia by Wilber after the divorce. The conclusion which Nellie seeks to draw from that provision of the contract is not a necessary one and is contradicted by the other paragraphs and the extraneous facts which help to explain the language of the contract.

■ Under all the circumstances here, the agreement between Wilber and Sophia was a valid contract under Minnesota law designed to take effect subsequent to the

entry of the divorce decree. All litigants recognize the applicability of Minnesota law to the issue here. The cases cited by Nellie in support of her claim that the property settlement contract was invalid are distinguishable on their facts.

Nellie's claim that the parties invalidly contracted for support of adult children by the insurance provision in the agreement is without merit. First, it may be noted that the insurance proceeds were to be used for education of the children in the event they attended a college or university. And so far as the agreement provides that, except for educational purposes, the proceeds of the policy should not be available to the children until they respectively reached thirty years of age, it seems obvious that such benefits were in the nature of a gift, not support for adult children. That Sophia could contract in a property settlement that certain insurance should be made available to the children instead of her, is not disputed. Certainly, one party for a consideration by another could be bound by a contract to make available certain benefits for adults.

Nellie urges that the Florida court's determination in its declaratory judgment proceedings is res adjudicata of the issue herein, and therefore she is entitled to the insurance proceeds. She contends that the Florida court possessed quasi-in-rem jurisdiction in the declaratory judgment proceedings and therefore that service by publication upon Sophia, John, Anna Belle, and Dorothy was proper. Respectable authority holds that, if an insurance policy is physically within the jurisdiction of the court, it may be the basis of a quasi-in-rem proceeding. Cameron v. Penn Mutual Life Ins. Co., 111 N.J.Eq. 24, 161 A. 55; Perry v. Young, 133 Tenn. 522, 182 S.W. 577, L.R.A.1917B, 385; Morgan v. Mutual Benefit Life Ins. Co., 189 N.Y. 447, 82 N.E. 438. But, assuming without deciding, that the Florida court possessed quasi-in-rem jurisdiction in the declaratory judgment proceeding, it is fundamental that the court must in fact and in law possess and exercise that jurisdiction with respect to the rights here involved before the claim of res adjudicata can be made. Hyde v. Blaxter, 8 Cir., 1927, 299 F. 167. The Florida Declaratory Judgments Act, Fla. Stats. of 1949, § 87.01 et seq., follows the Uniform Declaratory Judgments Act, and by its terms permits the court to render a declaratory judgment on "any" rights which may exist between the parties. The Act does not require a comprehensive determination of all rights which may exist between the parties to the declaratory action. Ready v. Safeway Rock Co., 1946, 157 Fla. 27, 24 So.2d 808. The query, therefore, is, Were the rights which Sophia and her children possessed under the contract between Wilber and Sophia included within the declaratory determination of the Florida court?

Wilber, by his original pleadings, sought a declaratory judgment only against the insurance company. He alleged the existence of the insurance policy, his desire to change the beneficiary, the fact that his divorced wife was once the beneficiary, that by certain specified acts he had attempted to name his children irrevocable beneficiaries of the policy following his divorce from Sophia, that he had had certain correspondence with the insurance company regarding the naming of his children as irrevocable beneficiaries, and that certain forms had been submitted to him by the company for that purpose, but that when he learned that the execution of such forms would prevent him from borrowing upon the policy, without the consent of the beneficiaries, he had instructed the company to name his children as revocable beneficiaries, that he now desired to name Nellie, his wife, as his beneficiary, but the insurance company refused to endorse the change upon the policy because of that which had occurred between the company and the insured. The amendment to the complaint by which Wilber included his former wife and children as parties consisted only of a statement that the facts of the original complaint were incorporated in the amended complaint by reference. True, the prayer for relief in the amended complaint requested a determination of the rights which Sophia and those whom she represented possessed with reference to the insurance policy. But, necessarily, the

prayer sought only a determination of the rights possessed upon the basis of the facts alleged in the complaint. There were no allegations in the complaint which assumed to embrace or encompass the portions of the property settlement contract between Wilber and Sophia, and which vested the children with certain rights as beneficiaries under the policy. That contract, and the rights of Sophia and her children thereunder, were not before the court, and as to any rights of the children therein, the Florida court was not requested to declare. The controversy, therefore, which the Florida court under the pleadings was requested to determine, was one which existed solely between the insurance company and Wilber. In view of the allegations of the complaint, therefore, it seems apparent that the only issues presented to the Florida court for its declaratory determination concern Wilber's rights to change the beneficiary under the terms of the policy in view of that which had taken place between Wilber and the company. That was the intent and purpose of the original complaint and such intent and purpose was not changed or modified by joining Sophia and her children on the same allegations.

The court's decree shows that Sophia and her children failed to answer Wilber's complaint, and it declares that the "pro confesso" decree entered against them was by the court "hereby confirmed and approved." By the terms of the decree, it was "ordered, adjudged and decreed that the said bill of complaint and all the allegations therein contained as to said defendants be and the same are hereby taken as true and confessed for want of appearance as aforesaid; and that said cause do now proceed ex parte as to the said defendants." Therefore, by the terms of the default decree, the default admitted only the allegations of the complaint and was intended to be a determination only of the questions raised by the complaint, see Strong v. Shatto, 1927, 201 Cal. 555, 258 P. 71; 16 Am. Jurisprudence, Decl. Judgments § 68, and consequently did not extend either expressly or by implication the scope of the determination sought by Wilber or which could be granted by the court. He was not entitled to relief in addition to that sought, or to a determination of rights not alleged. Garden Suburbs Golf & Country Club v. Pruitt, 1946, 156 Fla. 825, 24 So. 2d 898, 170 A.L.R. 1107.

The duty was upon the one seeking the declaratory determination to show the adverse claims which existed between himself and the defendants and of which he desired to obtain a determination. Revis v. Daugherty, 1926, 215 Ky. 823, 287 S.W. 28. The duty to present a pleading which shows the adverse rights between plaintiff and defendant is upon the plaintiff. Fleming v. State Road Dept., 1946, 157 Fla. 164, 25 So.2d 376. From this premise it seems necessarily to follow that he must allege the basis of the adverse claims and of what they consist. His failure to do that in an action like a declaratory action can only be considered an intended limitation upon the issues which he seeks determined.

Moreover, there is nothing in the court's memorandum and findings and order accompanying the decree which shows an intent to grant more relief than that requested in the complaint. The court's discussion of the facts involved is limited to the effect of the facts and circumstances stated in the complaint. And the court specifically declared in its findings and decree that Wilber could change the beneficiary to Nellie "in accordance with the prayer and allegations of the complaint." The decree, therefore, must be read in light of the complaint for declaratory relief.

The presence of Sophia and the children as defendants in the declaratory action upon the facts pleaded meant that the issue was whether, under the pleaded terms of the policy, they possessed, in view of Wilber's acts, the right to prevent the change of beneficiary endorsement by the insurance company upon the policy. The determination of this issue was not a determination of what rights Sophia and the children possessed as against Wilber and any beneficiary he attempted to name under an independent contract which was not a part of the insurance policy. In fact, the Florida court expressly declared and de-

creed that any independent contract between Wilber and a third person which was not a part of the policy had no effect upon the insurance company's duty to change the beneficiary at the request of the insured under the terms of the policy. In reality the court held such an independent contract immaterial to the issues before it. Nowhere does the court discuss or purport to declare any rights which the parties to this action possess as against each other under the terms of an independent contract. That the issue was not decided by implication as a result of the default is clear. For the default admitted only the facts pleaded, and the pro confesso decree provided for ex parte proceedings only upon those facts. The order which the court made as a result of its declaratory determinations must be recognized as an order only upon the issues submitted, not upon the issues not pleaded or determined.

In view of these premises, it follows that the issues presented by the instant interpleader action were not determined or presented by the Florida court's declaratory determination. Issues not presented for determination in a declaratory proceeding are not rendered res adjudicata by the determination of the issues presented, at least when the determination of the issues presented does not necessarily determine the issues not presented. Hyde v. Blaxter, 8 Cir., 1927, 299 F. 167; 16 Am. Jurisprudence, Decl. Judg., § 16. Consequently Nellie's claim of res adjudicata does not apply here.

It follows from the foregoing that the proceeds of the policy in question are payable as follows:

| | |
|---|---|
| To Sophia V. Rader | nothing |
| To John Rader | $2,941.07 |
| To Anna Belle Rader Engbring | 2,941.07 |
| To Dorothy Rader Welte | 2,941.07 |
| To Nellie Rader | 851.62 |

The attorney fees of the insurance company in this interpleader action were divided evenly between Nellie and the children as a group, for the rights which the children claim depend upon the same contract, not individual claims peculiar to each child, and the determination of the

rights of one child also determines the rights of the others. The mortuary dividend of $28.40 which was paid on the policy by the insurance company was added to Nellie's share, for the contract under which the children's rights exist sets a ceiling of $9,000 as the insurance which they may receive and contemplates that funeral expenses should be paid from the remainder of the policy proceeds.

The amount payable to Nellie is payable to her as an individual, for the contract between Sophia and Wilber did not deprive him of his right to give the amount of the policy in excess of $9,000 to whomever he wished. The amount is payable immediately. However, the rights which John, Anna Belle, and Dorothy possess to the insurance proceeds are limited by that provision of the contract which provides that they shall not receive the funds until they are thirty years old, with certain exceptions stated concerning funds for education.

The foregoing may be considered as the Court's findings of fact and conclusions of law. The Court, however, does retain jurisdiction to make such order or further orders as may be necessary with respect to the disbursement of said moneys in accordance herewith.

An exception is reserved to the petitioner, Nellie P. Rader.