**WESTERN LIFE INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**Virginia K. BOWER and Mable Claire Bower, also known as and called Mabel N. Bower, Defendants.**

**Virginia K. BOWER, Plaintiff in Interpleader,**

v.

**Mable Claire BOWER, also known as and called Mabel N. Bower, Defendant in Interpleader.**

Civ. No. 1828.

United States District Court
D. Montana,
Great Falls Division.
July 15, 1957.

T. P. Patterson, Helena, Mont., for plaintiff.

H. Cleveland Hall and Edward C. Alexander, Great Falls, Mont., for plaintiff in interpleader.

William A. Brown, Helena, Mont., for defendant in interpleader.

JAMESON, District Judge.

This cause is submitted by the plaintiff in interpleader (hereafter referred to as plaintiff) and the defendant in interpleader (hereafter referred to as defendant) upon an agreed statement of facts. The controversy involves the proceeds of an insurance policy issued upon the life of Joseph Edward Bower by Western Life Insurance Company, which has deposited in the registry of the court the proceeds of the policy amounting to $10,-093.17.

The policy was a single premium endowment policy, issued September 27, 1938, payable to the insured, if living, on September 27, 1970 and, in the event of his death prior thereto, to defendant, who was then the wife of the insured and the beneficiary named in the policy.

The policy contained the following provisions:

"9. This policy is issued with the express understanding that the insured may, without the consent of the beneficiary, receive every benefit, exercise every right, and enjoy every privilege conferred by this policy; and, without prejudice to any assignment, the insured shall have full power to agree with the Company to any change in, amend-ment to, release or surrender of this policy."

"13. The insured may at any time, and from time to time, provided this policy be then in force, and subject to the rights of any assignee, change the beneficiary or beneficiaries by sending to the Company at the Home Office, a written notice in due form accompanied by this policy. Such change will take effect only when endorsed on this policy by the Company and shall then relate back to and take effect as of the date the insured signed said written notice, whether the insured be living at the time of said endorsement or not, but without prejudice to the Company on account of any payment made by it before such endorsement."

On August 15, 1946, Joseph Edward Bower, the insured, and the defendant, entered into a property settlement agreement which provided in part as follows:

"Whereas, the parties to this agreement are husband and wife and certain differences have arisen between them to such an extent that one or the other of the parties hereto is about to file divorce proceedings against the other party, and

"Whereas, the parties hereto desire to settle and adjust amicably certain matters arising out of any divorce proceedings that may be instituted by either party hereto against the other, with reference to the care, custody and control of their minor children, support money for the same, alimony, property settlement and costs and fees of any such proceedings for divorce instituted by either party hereto, against the other * * *.

"III. That the first party, in lieu of any alimony for her support or any property settlement that the court may decree and determine in her favor against the second party, herewith covenants and agrees to accept in full settlement of all and any claims she has or may have against the second party for such alimony or property settlement, the property settlement set forth in the following paragraphs, to-wit:"

There follows provisions for the disposition of all of the property owned by

the parties to the agreement, including as paragraph VII, the following:

"That it is understood and agreed that the party of the second part has heretofore obtained a life or endowment insurance policy from the Western Life Insurance Company for $10,000.00, in which the party of the second part named the first party beneficiary and that if and when any payments are made thereon by said insurance company, during both of the lives of the parties hereto, that the same shall be divided equally between the parties hereto; that in the event that the second party shall die first, all the benefits and payments under said policy shall inure to and belong to the party of the first part and be paid to her; in the event the party of the first part should die first, all such benefits and payments shall inure to and be payable to the party of the second part."

Paragraph VIII reads as follows:

"That the transfers of all said property to the party entitled thereto, as herein provided, shall be consummated immediately after either one of the parties hereto has obtained a Decree of Divorce from the other party hereto."

At the same time, and as a part of the same transaction, Joseph Edward Bower and the defendant entered into a supplemental agreement, as follows:

"Supplemental Agreement

"This Supplemental Agreement, made and entered into this 15th day of August, A.D., 1946, by and between Mabel N. Bower, Party of the First Part and Joseph E. Bower, Party of the Second Part, both of Great Falls, Cascade County, Montana.

"Witnesseth:

"Whereas, the parties to this supplemental agreement, being husband and wife have heretofore, on the same date, entered into an Agreement with reference to property settlement, the care, custody and control of their minor children, support money for the same and costs and fees of any divorce proceedings instituted by either party hereto against the other, and in consideration thereof,

"It is hereby specifically understood and agreed that unless the First Party institutes a divorce proceedings against the Second Party on or before the 1st day of October, 1946, then, in that event, the Second Party shall have the right to institute such divorce proceedings against the First Party.

"It is further understood and agreed that in the event that either party resists the divorce proceedings instituted against them by the other party, that, then in that event, said property agreement shall be cancelled and considered null and void and not be used by either party in any such divorce proceedings.

"It is further agreed and understood that the Judge of any Court which may hear such divorce proceedings is hereby authorized, if the Court deems it warranted, to include in any decree of divorce any part or portion of said property settlement agreement.

"(Duly signed and acknowledged)."

Pursuant to these agreements, the defendant on September 26, 1946, instituted an action for divorce against Joseph Edward Bower. Default decree was entered October 24, 1946, in favor of the defendant herein.

On August 15, 1946, Joseph Edward Bower was in the exclusive possession of the policy of insurance and remained in possession thereof until his death on September 29, 1955. Subsequent to October 24, 1946, Joseph Edward Bower married the plaintiff herein, and on December 7, 1949, in the exercise of his reserved right to change the beneficiary named in the insurance policy, changed the beneficiary from the defendant herein to the plaintiff herein. Plaintiff at all times since then has been, and now is, the named beneficiary. Plaintiff claims the proceeds of the insurance policy as the beneficiary named in the policy at the time of the insured's death. Defendant claims the proceeds under the agreements between insured and defendant, dated August 15, 1946.

The plaintiff herein, Virginia Bower, as the named beneficiary at the time of

the insured's death, is entitled to the proceeds of the policy unless the defendant herein, Mabel Claire Bower, had a vested interest in the policy which could not be divested by a change of beneficiary under the reserved power. It is the position of the defendant that she acquired a vested interest in the policy under the property settlement agreement. Plaintiff contends that the property settlement agreement is against public policy and accordingly void and unenforceable.

■ It is the general rule that where a right to change the beneficiary has been reserved by the insured, the beneficiary named in the policy has a mere expectancy and no vested right or interest therein during the life of the insured. Morgan v. Penn Mut. Life Ins. Co., 8 Cir., 1938, 94 F.2d 129; Doering v. Buechler, 8 Cir., 1945, 146 F.2d 784; 46 C.J.S. Insurance § 1173 b (2), p. 62. This rule is subject, however, to well recognized exceptions, and a reserved right to change the beneficiary named in the policy may not be exercised where insured has divested himself of the right by agreement. This exception is stated by Corpus Juris Secundum as follows: "However, the reserved right to change the beneficiary may not be exercised where * * * insured has waived or divested himself of the right, as by agreeing to keep the policy in force for the beneficiary or by making a completed gift of the policy to the beneficiary, or where there are facts establishing an equitable interest in the beneficiary. Where sound equities exist in favor of the beneficiary, such rights will be protected against the substitution of a second beneficiary who is a volunteer or who has no superior equities in his favor". 46 C.J.S. Insurance § 1175 c (1) p. 71. See also 2 Appleman, Insurance Law and Practice, Sec. 922; 175 A.L.R. 1220.

■ Property settlements may create a vested equitable interest. This rule is stated in Appleman's Treatise on Insurance Law, Vol. 2, Sec. 922, p. 338, as follows:

"An antenuptial agreement is a satisfactory consideration for the acquisition of a vested interest in a policy designation. A settlement of property rights arising from a contemplated divorce may have the same result, as may a separate maintenance agreement, unless there is a specific statutory provision prohibiting the acquisition of vested rights by any person—in which event, of course, such law would control."

In Cooper v. Cooper, Cal.App.1957, 305 P.2d 906, 910, the husband and wife entered into a property settlement agreement incident to divorce, which provided that various insurance policies were assigned to the wife to be held in trust for the minor children. Formal assignments of the policies were not executed and no notice was given the insurance companies. The agreement was not mentioned in the divorce decree. Thereafter the husband, as here, changed the beneficiary to his second wife. The court held that the agreement created a vested interest, subject only to a condition subsequent which never arose, i. e., the minor children reaching majority. After distinguishing the general rule that the beneficiary has no vested interest prior to insured's death, the court pointed out that "an insured may by contract waive the right to change the beneficiary and convert what is usually the contingent interest of a beneficiary into a vested equitable interest."

In Hundertmark v. Hundertmark, 1952, 372 Pa. 138, 93 A.2d 856, 858, the insured reserved the right to change beneficiaries, and did so after contracting with his estranged wife that she would be the irrevocable beneficiary under the policy. The insurance company was never informed of this agreement. It was held that the agreement made the first wife the contractually irrevocable beneficiary. The court said:

"Our cases have uniformly recognized that a contract not to change the beneficiary, entered into by an insured and his designated beneficiary for a valuable consideration,

is binding as between the insured, or his volunteer, and the contractually determined beneficiary and will be enforced in equity. For example, in Shepler v. Pennsylvania R. Co., 334 Pa. 257, 5 A.2d 567, 568, where the formerly named beneficiary was denied a right to the proceeds of the policy because there was no consideration for the insured's promise not to change the beneficiary, this court took occasion to note that 'A different situation is created, however, when the member agrees, for consideration, to name a certain person as beneficiary, or, if one has already been named, not to make a substitution.' "

Shoudy v. Shoudy, 1921, 55 Cal.App. 344, 203 P. 433, involved a property settlement agreement which was contained in a letter to the insured's sister. After the court decree was entered, the insured wrote to the insurance company, telling them he had been divorced but that he wanted his estranged wife to remain beneficiary (without saying irrevocably). Later he changed the beneficiary in favor of a second wife. The court held the first wife had a vested equitable interest which could not be divested by changing the beneficiary. Other cases holding similarly are Goodrich v. Massachusetts Mutual Life Ins. Co., 1941, 34 Tenn.App. 516, 240 S.W.2d 263; Waltz v. Travelers Ins. Co., D.C. Tenn.1954, 124 F.Supp. 465; Locomotive E. Mut. L. & Acc. Ins. Ass'n v. Locke, 1937, 251 App.Div. 146, 295 N.Y. S. 689, affirmed 277 N.Y. 584, 13 N.E.2d 781; Prudential Ins. Co. of America v. Rader, D.C.Minn.1951, 98 F.Supp. 44; Jacoby v. Jacoby, 1943, 69 S.D. 432, 11 N.W.2d 135; Thomson v. Thomson, 8 Cir., 1946, 156 F.2d 581.

■ Factual distinctions between the instant case and those cited do no violence to the rule of law which is applicable here. The insured and his then wife entered into a contract which provided that she should either share in the proceeds of an insurance policy (provided both parties were living on September 27, 1970) or receive the entire proceeds (provided she outlived her estranged husband and he died prior to the date the policy became payable). This agreement was not contained in the divorce decree, but this is not necessary. Prudential Ins. Co. of America v. Rader, supra.

■ In some of the cases cited above the separation agreement provided that the beneficiary should remain irrevocable. Counsel for plaintiff argue that this case accordingly is distinguishable. It does not appear, however, that the use of the word "irrevocable" in itself has any legal import, but rather that the effect of the words used should be controlling. An agreement whereby the proceeds of an insurance policy are, in every conceivable event, disposed of, is tantamount to a designation of an irrevocable beneficiary. The proceeds were, at the execution of the agreements, vested subject only to conditions subsequent mentioned in the agreement. Plaintiff does not allege or argue that the agreement was not entered into, or that the parties thereto did not intend its obvious portent. Her theory seems to be that although it was the intent of the insured when he signed the agreement to relinquish the proceeds of the policy to his wife, subject to certain conditions, his failure to notify the insurance company and his subsequent affirmative act changing beneficiaries, deprived his estranged wife, *without her consent, of the policy proceeds.* Such avoidance of contractual obligations should not be permitted if the agreement is enforceable.

■ The greater force of plaintiff's argument is directed to the contention that the property settlement agreement is violative of the public policy of Montana and accordingly void and unenforceable. The rule is well established that any agreement between husband and wife intended to facilitate the procurement of a divorce is contrary to public policy and void. Stebbins v. Morris, 19 Mont. 115, 47 P. 642; Sherman v. Sherman, 65 Mont. 227, 211 P. 321; Clary v. Fleming, 60 Mont. 246, 198 P. 546; Brown v. Brown, 8 Cal.App.2d 364, 47

P.2d 352; 17 Am.Jur. Divorce and Separation, Sec. 14, p. 156, and cases there cited. Agreements conditioned on divorce are likewise generally held to be against public policy. Ibid, Am.Jur.

█ Defendant contends that the instant agreement does not facilitate a divorce but is merely a disposition of property between the estranged husband and wife. The court cannot agree. The agreements were obviously to become operative in the future, and only upon the condition that a divorce proceeding was instituted. Further, if one party did not institute the proceeding, the other party was given the right to do so. Moreover, resistance to the divorce would render the property settlement agreement nugatory. The agreements construed together facilitated the divorce and are void. Sherman v. Sherman, supra. The fact that the provisions most clearly rendering the agreement void were put in a supplementary agreement does not change this result. The agreements must be read together. Section 13–708, Revised Codes of Montana, 1947; Hodgkiss v. Northland Petroleum Consolidated, 104 Mont. 328, 67 P.2d 811; Ryan v. Bloom, 120 Mont. 443, 186 P.2d 879; Doheny v. United States Fidelity & Guaranty Co., D.C., 34 F.Supp. 888.

Having concluded that the agreements construed together violated public policy and were void, may defendant rely upon any portion of the contract in this action? Plaintiff argues that defendant is not entitled to rely upon any portion of a void contract and cannot accordingly recover in this action. There is respectable authority in support of that position.

Other cases hold, however, that the contract may be severable and legal portions enforced. The general rule is stated by Williston on Contracts, Vol. 1, p. 470, as follows: "If consideration is even partially illegal the whole agreement is tainted unless the legal portion of the agreement is severable."

The Montana Supreme Court has held severable property settlement agreements which clearly facilitated divorce and were accordingly void. In Herrin v. Herrin, 1936, 103 Mont. 469, 63 P.2d 137, 139, the court said:

"The second error is on the conclusion of the trial court that the agreement between the parties by which plaintiff turned over certain property to the defendant, and in which agreement reference is made to separation and divorce, is void on the ground of public policy. We think the court's ruling that such contract is void on the ground of public policy is correct in so far as it relates to a divorce. The testimony of Judge Galen, who drew the agreement for the parties, substantially supports the contention of counsel for defendant that such agreement comes within the rule laid down in Sherman v. Sherman, 65 Mont. 227, 211 P. 321, 322, where this court said: 'If, however, the agreement be entered into with the intent of bringing about or facilitating a divorce, it will be declared void.' But we think it repugnant to sound principles of equity to permit one to profit by the provisions of such an agreement and then void its objectionable parts by invoking the rule mentioned, and we therefore hold the contract to be separable. This conclusion is one of first impression in this jurisdiction in actions of this nature so far as our research reveals; but there is authority for such a rule in actions at law, (citing cases) and we think such a holding is fair and equitable and does substantial justice between the parties. The contract is therefore held to have been entered into for the purpose of facilitating a divorce, and as to that it is void as contrary to public policy, but as to the property settlement it is valid and binding upon both parties."

Likewise, in Ryan v. Ryan, 1940, 111 Mont. 104, 106 P.2d 337, the suit was to enforce a separation agreement entered into collusively and therefore illegal. The court reviewed its decisions in

Grush v. Grush, 90 Mont. 381, 3 P.2d 402, and Herrin v. Herrin, supra, and concluded that under the law as stated in those cases, the agreement was separable, and that the consideration supporting the legal portion of the contract was the wife's relinquishment of her property rights. The same reasoning is applicable here.

Plaintiff argues that these Montana cases are distinguishable for the reasons that (1) the party seeking the benefit (defendant herein) is the spouse to whom the decree of divorce was granted, pursuant to the collusive agreement; (2) if anyone benefited from the illegal agreement, it was the wife and not the husband; and (3) the plaintiff herein was not a party to the illegal contract and received no benefit therefrom. While the wife (defendant herein) obtained an uncontested decree of divorce, the agreement specifically provided that if she did not file an action by a certain date, her husband could do so. It cannot be determined from the record which, if either party, received the greater benefit from the contract. The wife presumably released certain property rights in consideration for the property settlement portion of the agreement. Presumably the other provisions of the property settlement agreement have been performed. The wife would have the same right as her husband to enforce the property settlement, if the agreement is separable.

 It is true that plaintiff was not a party to the agreement, but she does seek to avoid the effect of a contract which her husband had entered into prior to their marriage with respect to property acquired prior to marriage. No part of the premium on the policy in question was paid subsequent to plaintiff's marriage to the insured. It was a single premium policy, paid in full while insured was married to defendant. Under these circumstances, plaintiff can acquire no greater equity than the insured by virtue of her appointment as beneficiary. Under the Montana decisions the insured could not have relieved himself of the effect of this agreement; nor can his appointee.

Defendant will prepare judgment in accordance with this opinion.